## WESTON v. WESTON.

(Supreme Court, Appellate Division, Fourth Department.   May 5, 1903.)

1. LIBEL—WHAT CONSTITUTES.
   A person who speaks defamatory words respecting another in the presence of reporters and representatives of newspapers, for the purpose of having the same published in such papers, is guilty of a libel.

2. SAME—ACTIONABLE WORDS.
   A publication charging that one is a blackmailer and gambler is libelous per se.

3. SAME—PERSON LIABLE—EVIDENCE—QUESTION FOR JURY.
   In an action for libel, it was shown that defendant, who was a brother of plaintiff, spoke the defamatory words complained of in the presence of newspaper reporters; that the reporters called on him for an interview

relative to his views on plaintiff's action against him for the alienation of the affections of plaintiff's wife; that defendant asked the reporters to keep the matter out of the papers, and, when informed that that could not be done, spoke the defamatory matter published in the papers which the reporters represented. *Held*, that the question whether defendant was the instigator of, and responsible for, the publication of the defamatory matter, was for the jury.

4. SAME—MALICE—EVIDENCE—QUESTION FOR JURY.
    The question whether defendant was void of any malicious intent, and therefore not liable to substantial damages, was for the jury.

Appeal from Trial Term, Monroe County.

Action by Charles O. Weston against John P. Weston. From a judgment after trial and nonsuit, and from an order denying a motion for a new trial on the minutes, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

W. H. Whiting, for appellant.
M. H. McMath, for respondent.

ADAMS, P. J. The original complaint in this action contained but a single count, which was so framed as to render it doubtful whether the pleader intended to allege slander or libel for the plaintiff's cause of action, and when the case was moved for trial the plaintiff's counsel, in response to a demand that he be required to elect which cause of action he would proceed to trial upon, said unhesitatingly that he claimed the action was one for libel, whereupon a motion was made to dismiss the complaint upon the ground that it did not state facts sufficient to constitute a cause of action of that nature. The plaintiff's counsel then asked for leave to amend his complaint, which motion was granted, and the case was in consequence thereof ordered over the term. The amended complaint also contains but a single count, and this, likewise, was so framed as to leave the intention of the pleader somewhat obscure; and consequently when the cause for the second time came on for trial a discussion arose as to whether the action was one for slander or libel, which resulted in the trial court holding that it was for the latter cause. The trial was thereupon conducted upon that theory, and at the close of the plaintiff's case a nonsuit was ordered upon the ground that the evidence failed to prove any libel.

The plaintiff's counsel claimed that a prima facie case of libel had been established, and insisted that, as the evidence then stood, he had a right to go to the jury; but his motion for leave so to do was denied by the court, to which ruling, as well as to the order directing a nonsuit, an exception was duly taken. As a consequence, the primary, and, as we view it, the decisive, question to be now considered, is whether or not these two rulings were correct.

Libel may be defined to be "a malicious defamation, expressed either by writing or printing, or by signs, pictures, effigies, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects, of one who is alive, and thereby expose him to public

hatred, contempt, ridicule, or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business, or occupation." 18 Am. & Eng. Ency. Law (2d Ed.) p. 861. See, also, Pen. Code, § 242. And we are of the opinion that, as thus defined, the amended complaint does contain allegations which are sufficient to constitute such a cause of action, for it charges the defendant with having spoken in the presence of the reporters and representatives of certain newspapers, for the purpose of having the same published in such papers, "the following false, scandalous, and defamatory words: 'Now that my brother (the plaintiff meaning) has sunk so low, he turns to blackmail me. It is blackmail—nothing else. He (the plaintiff meaning) spends considerable time in gambling. His wife (the plaintiff's wife meaning) has been forced to go to work while their little child is being cared for at my house until a place can be found for it. I realized that he (the plaintiff meaning) had become so abandoned that he (the plaintiff meaning) would take any means to obtain money.' "

It is claimed on behalf of the defendant that, even conceding the truth of the allegation, the action will not lie, because the words which the defendant is charged to have thus uttered are not actionable per se, and no special damages are alleged, while, upon the other hand, it is insisted that the words are actionable because they charge the plaintiff with the commission of one or more crimes. Without, however, entering upon a discussion of the question which is thus presented, we deem it sufficient to say that the language with the publication of which the defendant is charged is such as would expose to contempt, and tend to degrade, defame, and injure, the person of whom they were spoken, and that it is consequently libelous, within the definition above given, even though it might not be actionable if it had been merely spoken, and not published; for it is well settled that, while written words are libelous in all cases when if uttered orally they would be actionable, they may likewise be libelous when they would not support an action for slander. Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810; Simpson v. Press Pub. Co., 33 Misc. Rep. 228, 67 N. Y. Supp. 401. We pass, therefore, to the more important question of whether there was any evidence furnished by the plaintiff tending to sustain the allegations of his complaint which ought to have been submitted to the jury.

It seems that the plaintiff and the defendant are brothers, and that the former had brought an action against the latter to recover damages for the alienation of the affections of his (the plaintiff's) wife. The bringing of this action caused some excitement and gossip in the city of Rochester, where the parties lived; and as a consequence the reporters for three of the daily papers of that city met the defendant, by appointment, to obtain a statement from him, in order that it might be published in connection with the allegations of the plaintiff's complaint. Hugh Pendexter, one of the reporters, testified that he stated to the defendant that he was a newspaper man, and that, before he printed the story as contained in his brother's complaint, he would like to hear what he (the defendant) had to say, and that thereupon the defendant stated that the action "was a re-

taliatory measure to a divorce suit commenced by Charles Weston's wife, and that Charles Weston had lived with him at his expense, and that it was merely an attempt at blackmail, and that he [the plaintiff] had sunk so low that he would resort to any means to obtain money from him." William P. Epstein, a reporter for another paper, testified that he also had an interview with the defendant at the latter's office, in which he told the defendant that he had heard of the action brought by his brother, and that he "had come there to see him about it, for the purpose of publishing it"; that the defendant asked him to keep it out of the paper. He was then informed by Epstein that this could not be done, but that the paper represented by him would publish a statement from the defendant giving his side of the case, and the defendant thereupon stated, in substance, "that his brother was a blackmailer; that he was a gambler; that, inasmuch as he had worked hard and built up a reputation for himself in Rochester in both business and church circles, that Charles Weston was trying to drag him down; that he would employ any means to do that; * * * that his brother would do anything to get money; and that this was a move on his part to get money." Both of these witnesses testified that they wrote up the interview with the defendant, and that the substance thereof was published in the papers represented by them, respectively, as it was in still another paper, whose reporter (one McCoy) stated that he was present at the interview, but he did not attempt to detail the same.

It would seem, therefore, that the case is quite different in its facts from that of Schoepflin v. Coffey, 162 N. Y. 12, 56 N. E. 502, upon which, apparently, much reliance is placed by the defendant's counsel, and in which it was said that there was no proof that the defendant's statement was made for publication, for here the defendant not only knew that he was making statements to the reporters of certain newspapers, but he was advised before making them that such statements were requested for publication. It is true that he expressed a desire to keep the matter out of the newspapers, but, upon being informed that this could not be accomplished, he made his statements in such language as he saw fit to employ, and the same were thereafter published. It is doubtless the fact, and may be, therefore, conceded, that he allowed himself to be interviewed by the reporters at their solicitation, and without any design or desire to procure the publication of what might be said by him during such interviews, but nevertheless he made his statements with the knowledge that they were to be published; and, in these circumstances, we think it was for the jury to say whether or not he was the instigator of, and responsible for, their publication. Haney Mfg. Co. v. Perkins, 78 Mich. 1, 43 N. W. 1073. It is unquestionably the rule that one who is the moving cause or instigator of the publication of a libel is quite as responsible for its direct and immediate consequences as the publisher himself. Adams v. Kelly, R. & M. 157; Roberts v. Breckon, 31 App. Div. 431, 52 N. Y. Supp. 638; Thomas v. Smith, 75 Hun, 573, 27 N. Y. Supp. 589; Odgers on Libel & Slander, 155–157. See, also, 18 Am. & E. Ency. L. (2d Ed.) p. 1066, and cases cited under subdivision "e." In circumstances such as the

proofs in this case present, it is altogether probable that a jury might find that the defendant, although the proximate cause of the publication complained of, was yet void of any malicious intent, and therefore not justly amenable to substantial damages; but this is a question for the jury, and not the court, to determine. Hamilton v. Eno, 81 N. Y. 116. And we therefore feel called upon to say simply that, in our opinion, as the case stood when the nonsuit was ordered, a case was made which required that the defendant should be put to his proof.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.