ARMSTRONG v. SUN PRINTING & PUBLISHING ASS'N.

(Supreme Court, Appellate Division, Second Department. April 22, 1910.)

1. LIBEL AND SLANDER (§ 86*)—ACTION—PLEADING—INNUENDO.

The office of an innuendo in the law of slander is to define the meaning of words, and to show that they relate to the plaintiff, and not to enlarge their meaning.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 205; Dec. Dig. § 86.*]

2. CORPORATIONS (§ 30*)—"PROMOTER."

A "promoter" is one who brings together the persons who become interested in the enterprise, aids in procuring subscriptions, and sets in motion the machinery which leads to the formation of the corporation itself. The term involves the idea of exertion for the purpose of getting up and starting a company, and also the idea of some duty towards the company imposed by or arising from the position which the so-called promoter assumes towards it. It is a term of business, and not of law, usefully summing up, in a single word, a number of business operations familiar to the commercial world by which the company is brought into existence. The term does not imply that the promoters are brought into the corporation itself, nor have promoters necessarily aught to do with the payment in of the capital or cash of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 97; Dec. Dig. § 30.*

For other definitions, see Words and Phrases, vol. 6, pp. 5682, 5683.]

3. LIBEL AND SLANDER (§ 9*)—LIBELOUS WORDS—APPLICABILITY TO PLAINTIFF.

A declaration charging that certain state officials contended at that time that the capital and surplus of an insurance corporation previously organized, when certified by such state officials as having been paid in, in cash, were to a large extent fictitious, that plaintiff was one of the promoters of the corporation and was its president at the time of the publication, was not libelous per se as imputing dishonesty to plaintiff in his business or profession.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80–90; Dec. Dig. § 9.*]

4. LIBEL AND SLANDER (§ 9*)—WORDS LIBELOUS PER SE—TRADE OR BUSINESS.

In order that words shall be libelous per se as disparaging a person in his trade or business, they must have been spoken of plaintiff in relation thereto, and be of such a character as would prejudice him by impeaching either his skill or knowledge, or attacking his conduct in such business.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 80; Dec. Dig. § 9.*]

Appeal from Special Term, Kings County.

Action for libel by Philander B. Armstrong against the Sun Printing & Publishing Association. From an order overruling a demurrer to the complaint, defendant appeals. Reversed, and demurrer sustained.

The alleged libel and the innuendo are as follows:

" 'Attack Gow Insurance Company. Jackson to ask for Receiver for the Excelsior. The company was a promotion of William Gow and Howard Maxwell, and others concerned with them in the Borough Bank in Brooklyn and some insurance man, including Philander B. Armstrong who is the President of the Company and Eugene Van Schaick its counsel. It is the contention of the Attorney General, backed up by the Insurance Department that the capital and surplus certified as having been paid in in cash were to a large extent fictitious.' (Meaning thereby that the plaintiff and others had frequently and for fraudulent purposes organized said Excelsior Fire Insurance Company with an alleged capital and surplus which were largely false and fictitious and that plaintiff and others had falsely certified to the said false and fictitious capital)."

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Herbert C. Smyth (James M. Beck and Carl A. Mead, on the brief), for appellant.

Henry A. Powell, for respondent.

JENKS, J. The odium of the article is that the Attorney General, backed up by the insurance department, contends that the capital and the surplus certified as having been paid in in cash were to a large extent fictitious. No charge of any fault is made against the plaintiff, save as it may be inferred from the statements that he was a promotor and is the president of the company. It is not charged that the capital and surplus are fictitious, but that they were fictitious when certified.

Examination of the general statutes then applicable shows that a certain number of persons could become a corporation for fire insurance purposes by filing in the office of the superintendent of insurance a declaration, signed by all of them, of intention to form a corporation comprising certain specified particulars, including the amount of capital, which could not be less than $200,000 fully paid in in cash. Before it could carry on business, a certificate of the superintendent of insurance that it had complied with all the requirements of law was necessary. But the superintendent could not file the declaration or charter or grant such certificate until they were certified by the Attorney General. Chapter 690, Laws 1892, §§ 110, 12, 10, as amended by chapter 725, Laws 1893. After approval of the Attorney General, the statute (section 11, Insurance Law, as amended by chapter 326, Laws 1906) provided:

"Examination by Superintendent.—If the declaration and charter specified in the preceding section shall be approved by the Attorney General, the superintendent shall thereupon cause an examination to be made by himself or by one or more competent and disinterested persons specially appointed by him for that purpose, into the affairs of the corporation or proposed corporation. If such persons, after examination made, shall certify under oath, if it be a stock corporation, that the amount of capital required by law has been paid

in and is possessed by it in cash, or is invested in the manner required by law; or if a mutual or co-operative corporation, that it has received and is in actual possession of the capital, premiums or engagements of insurance to the full extent required by law, the superintendent shall file such certificate in his department. Every such insurance corporation shall also deposit with the superintendent of insurance, before receiving authority to transact business in this state, such sums of money or securities as may be required by law."

On the other hand, I am not cited to any law that required promoters, organizers, or officers of such corporations to make any certificate on this subject, and I do not find any provision to that effect in the statutes. The learned counsel for the plaintiff concedes in his printed points that part of the innuendo, "and that plaintiff and others had falsely certified to the said false and fictitious capital," "are to be treated as mere surplusage." An innuendo does not enlarge the meaning of words. It is to define them or to show that they relate to the plaintiff. Van Heusen v. Argenteau, 194 N. Y. 309, 87 N. E. 437. Any charge that the plaintiff "fraudulently organized" the company must be found in the statement of promotion, or in the statement that he is the president. In Dickerman v. Northern Trust Company, 176 U. S., at page 203, 20 Sup. Ct., at page 319, 44 L. Ed. 423, the court say:

"A promoter is one who 'brings together the persons who become interested in the enterprise, aids in procuring subscriptions, and sets in motion the machinery which leads to the formation of the corporation itself.' Cook on Stock and Stockholders, § 651. Or as defined by the English statute of 7 & 8 Vict. c. 110, § 3, 'every person acting, by whatever name, in the forming and establishing of a company at any period prior to the company' becoming fully incorporated. See, also, Lloyd on Corporate Liability for Acts of Promoters, 17.'"

Cook on Corporations (section 651, note 3) collates a number of definitions, and among them that given by Lindley, J., in Emma Silver Mining Co. v. Lewis, L. R. 4 C. P. D. 396:

"The term 'promoter' involves the idea of exertion for the purpose of getting up and starting a company (of what is called 'floating' it), and also the idea of some duty towards the company imposed by or arising from the position which the so-called promoter assumes towards it."

Morawetz on Corporations (2d Ed. vol. 1) says:

"A person who, by his active endeavors, assists in procuring the formation of a company and the subscription of its shares, is commonly called a 'promoter.' The word 'promoter' has no technical legal meaning, and applies to any person who takes an active part in inducing the formation of a company, whether he afterwards becomes connected with the company or not."

Note:

"In Whaley Bridge, etc., Co. v. Green, L. R. 5 Q. B. D. 109, 111, Bowen, J., said: 'The term "promoter" is a term not of law, but of business, usefully summing up, in a single word, a number of business operations familiar to the commercial world, by which a company is generally brought into existence.'"

Promoters are not the corporation (Battelle v. Northwestern Cement & Concrete Pavement Co., 37 Minn. 89, 33 N. W. 327), and the term does not imply that they become related to the corporation itself (Morawetz, ut supra; Ex Mission L. & W. Co. v. Flash, 97 Cal. 610, 32 Pac. 600). A promoter, then, does not necessarily have aught to do

with the payment in of the capital or the cash of the corporation. The present president of a corporation is not necessarily connected with the organization of a corporation, even though he had been a promoter thereof.

But it is contended that the article is libelous per se. Words that disparage an officer, professional man, or trader are not actionable per se. They " 'must touch the plaintiff in his office, profession, or trade'; that is, they must be shown to have been spoken of the plaintiff in relation thereto, and to be such as would prejudice him therein. They must impeach either his skill or knowledge, or attack his conduct therein." Odgers on Slander and Libel, p. 73, and cases cited. The same author further writes:

" 'Every authority which I have been able to find either shows the want of some general requisite, as honesty, capacity, fidelity, etc., or connects the imputation with the plaintiff's office, trade, or business.' Per Bayley, B., in Lumby v. Allday, 1 Cr. & J., at pp. 305, 306, cited with approval by Lord Denman, C. J., in Ayre v. Craven, 2 A. & E., at p. 8, and by Lord Herschell, L. C., in Alexander v. Jenkins (1892) 1 Q. B., at p. 800."

The business of the plaintiff, so far as we are informed, is that of president of an insurance company. The charge virtually is that certain state officials now contend that the capital and surplus of a corporation, when certified by these state officials as having been paid in in cash, were to a large extent fictitious. Does such statement impute "any kind of fraud, dishonesty, misconduct, incapacity, unfitness, or want of any necessary qualification" in the calling of him who is now the president of that company? I use the language of Starkie on Slander, § 188, approved and adopted in Moore v. Francis, 121 N. Y. 205, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810. It certainly does not connect that official in his vocation as the present president with acts with which he could have no concern, and which for aught that appears, were done years ago.

I advise that the interlocutory judgment be reversed, with costs, and that the demurrer be sustained, with costs. All concur.