ANNA F. OSTROWE, Respondent, v. RICHARD L. LEE, Appellant.

(Submitted February 9, 1931; decided March 24, 1931.)

*Henry Waldman* and *Joseph G. Abramson* for appellant. The dictation of a libelous letter to one's stenographer, followed by transcription and mailing, is not a publication. (*Owen* v. *Ogilvie Pub. Co.*, 32 App. Div. 465; *Wells* v. *Belstrat Hotel Corp.*, 212 App. Div. 366; *Kennedy* v. *Butler*, 245 N. Y. 204; *Senamcour* v. *Societe Le Prevoyance*, 146 Mass. 616; *Landis* v. *Campbell*, 79 Mo. 433; *Gambrill* v. *Schooley*, 93 Md. 48; *Cartwright Caps Co.* v. *Fischel & Kaufman*, 113 Miss. 359; *Nelson* v. *Whitten*, 272 Fed. Rep. 135; *Pullman* v. *Hill*, 1 Q. B. 524; *Boxsius* v. *Goblet Freres*, 1 Q. B. 843; *Edmonstone* v. *Birch & Co.*, 1 K. B. 371; *Berry* v. *City of N. Y. Ins. Co.*, 210 Ala. 369; *Ferndon* v. *Dickens*, 161 Ala. 181; *Snyder* v. *Andrews*, 6 Barb. 43; *Grove Furniture Co.* v. *Right*, 265 Fed. Rep. 873; *Freeman* v. *Dayton Scale Co.*, 19 S. W. Rep. 255.)

*Alexander Pfeiffer* and *Jacob B. Goldberg* for respondent. The dictation of the libel by the defendant to the stenographer and the reading and transcription thereof by her constitutes a publication of the libel. (*Gambrill* v. *Schooley*, 93 Md. 48; *Williamson* v. *Freer*, L. R. 9 C. P. 393; *Nelson* v. *Whitten*, 272 Fed. Rep. 135; *Ferndon* v. *Dickens*, 161 Ala. 181; *Berry* v. *City of N. Y. Ins. Co.*, 219 Ala. 369; *Snyder* v. *Andrews*, 6 Barb. 43; *Owen* v. *Ogilvie Pub. Co.*, 32 App. Div. 465; *Wells* v. *Belstrat Hotel Corp.*, 212 App. Div. 366; *Kennedy* v. *Butler*, 245 N. Y. 204; *Cartwright Caps Co.* v. *Fischel & Kaufman*, 113 Miss. 359.)

CARDOZO, Ch. J. The complaint states, or attempts to state, two causes of action, one for libel and the other

for slander. In the first, the plaintiff charges that the defendant composed a letter accusing the plaintiff of the crime of larceny; that he dictated this letter to his stenographer; that the stenographer, in obedience to his orders, read the notes and transcribed them; and that the letter so transcribed was received by the plaintiff through the mails. In the second cause of action, the plaintiff charges that a like defamatory charge was made over the telephone.

The defendant concedes upon this appeal that the second cause of action states the publication of a slander. The question is whether the first states the publication of a libel.

In the law of defamation, publication is a term of art (Odgers, Libel and Slander, p. 131; Pollock, Torts [13th ed.], p. 255). A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else. The reader may be a telegraph operator (*Williamson* v. *Frere*, L. R. 9 C. P. 393), or the compositor in a printing house (*Baldwin* v. *Elphinston*, 2 W. Bl. 1037), or the copyist who reproduces a long hand draft (*Puterbaugh* v. *Gold Medal F. M. Co.*, 7 Ont. L. R. 582, 586). The legal consequence is not altered where the symbols reproduced or interpreted are the notes of a stenographer. Publication there still is as a result of the dictation, at least where the notes have been examined or transcribed (*Pullman* v. *Hill & Co.*, [1891] 1 Q. B. 524; *Boxsius* v. *Goblet Frères*, [1894] 1 Q. B. 842; *Gambrill* v. *Schooley*, 93 Md. 48; *Ferdon* v. *Dickens*, 161 Ala. 181; *Berry* v. *City of New York Ins. Co.*, 210 Ala. 369, 371; *Nelson* v. *Whitten*, 272 Fed. Rep. 135; *Puterbaugh* v. *Gold Medal F. M. Co.*, *supra;* Gatley, Libel and Slander, p. 91; cf. *Kennedy* v. *Butler, Inc.*, 245 N. Y. 204). Enough that a writing defamatory in content has been read and understood at the behest of the defamer (1 Street, Foundations of Legal Liability, p. 297).

The argument is made that the wrong in such a case is

slander and not libel (Salmond, Torts [7th ed.], p. 530; Odgers, Libel and Slander, p. 135; *Angelini* v. *Antico*, 31 New Zealand Rep. 841; cf. *Osborn* v. *Boulter & Son*, [1930] 2 K. B. 226, at pp. 231, 236, 237). " It is difficult to see how A can publish to B a document which is written by B himself " (Salmond, *supra*). The criticism would be just if B were the author of the document, or wrote it of his own motion. The point is dulled when we remember that in noting and transcribing he does the bidding of the defamer, who has used him as an instrument to give existence to the writing (Street, *supra*, p. 297). Very often a stenographer does not grasp the meaning of dictated words till the dictation is over and the symbols have been read. This is particularly likely to be the case where a defamatory charge is made equivocally or with evasive innuendoes. The author who directs his copyist to read, has displayed the writing to the reader as truly and effectively as if he had copied it himself.

To hold otherwise is to lose sight of history and origins. The schism in the law of defamation between the older wrong of slander and the newer one of libel is not the product of mere accident (Veeder, The History of the Law of Defamation, vol. 3, Essays in Anglo-American Legal History, 459, 461, 467, 468, 471; Fisher, The History of the Law of Libel, 10 Law Quarterly Review, 158; 1 Street, Foundations of Legal Liability, pp. 291, 292; 8 Holdsworth, History of English Law, p. 365). It has its genesis in evils which the years have not erased. Many things that are defamatory may be said with impunity through the medium of speech. Not so, however, when speech is caught upon the wing and transmuted into print. What gives the sting to the writing is its permanence of form. The spoken word dissolves, but the written one abides and " perpetuates the scandal " (*Harman and Delany*, Fitzgibbon, 253; Veeder, *supra*, p. 472; Street, *supra*, p. 294). When one speaks of a writing in this connection, one does not limit oneself to writings

in manuscripts or books. Any symbol suffices — pictures, hieroglyphics, shorthand notes — if only what is written is intelligible to him who reads (Odgers, Libel and Slander, pp. 7, 21). There is publication of a libel if a stenographer reads the notes that have been taken by another. Neither the evil nor the result is different when the notes that he reads have been taken by himself (Street, *supra*, p. 297, n).

The soundness of a conclusion may not infrequently be tested by its consequences. Let us assume a case where words, unaccompanied by special damage, are libelous if written, but are not slanderous *per se*. Let us assume that the defamer has a grudge that will be served by defaming his victim in the thought of a particular person. Let us assume that this person is also his stenographer. With that mind he dictates the defamatory words and instructs the stenographer to preserve and read what has been written. By hypothesis, the one defamed is without a remedy for slander. By hypothesis, too, a writing has been created at the instance of the defamer and lodged in the custody of the very person whose mind was to be poisoned. The outrage is without redress if the libel is not published when written out and read.

There are decisions to the effect that publication to a stenographer, unless impelled by actual malice, is protected by a privilege whenever privilege attaches to the principal communication to which it is an incident (*Boxsius* v. *Goblet Frères*, L. R. [1894] 1 Q. B. 842; *Osborn* v. *Boulter & Son*, L. R. [1930] 2 K. B. 226; *Roff* v. *B. & F. Chemical Mfg. Co.*, [1918] 2 K. B. 677, 684). " If a business communication is privileged, as being made on a privileged occasion, the privilege covers all incidents of the transaction and treatment of that communication which are in accordance with the reasonable and usual course of business " (*Edmonson* v. *Birch & Co.*, (1907) 1 K. B. 371, 382.). We make no attempt at this

time to state with precision the limits of this privilege, for no such question is here upon the record now before us. The plaintiff charges malice, and privilege is a defense to be pleaded and proved (*Kennedy* v. *Butler, Inc.*, 245 N. Y. 204, 207). Enough for present purposes that the complaint is good upon its face.

The order should be affirmed, with costs, and the question certified answered " yes."

POUND, CRANE and O'BRIEN, JJ., concur; LEHMAN, KELLOGG and HUBBS, JJ., dissent.

Order affirmed, etc.