DANIEL KARELAS, Respondent, *v.* DELEVAN M. BALDWIN, Appellant.

Second Department, December 30, 1932.

*Elijah T. Russell,* for the appellant.

*Nathan B. Rood* [*George Dines, Arthur M. Becker* and *Francis C. Dale* with him on the brief], for the respondent.

CARSWELL, J. The defendant Baldwin is a justice of the peace in the town of Yorktown, Westchester county. The plaintiff Karelas was, on July 30, 1927, arraigned before the defendant justice on a complaint by the wife of Karelas involving a charge of assault in the third degree. In the course of the arraignment the defendant justice said of the plaintiff, who conducted a grocery store in the village of Lake Mohegan: " You are a liar. You are only a paper citizen. I have been in Greece and I know what the Greeks are like. You are a disgrace to the community and should be run out of the whole country."

In an action brought by Karelas, a jury has found that the foregoing, spoken in the course of a judicial proceeding presided over by the defendant, was slander; that the words were not pertinent or relevant, and has cast the defendant in damages.

One defense interposed was that of absolute privilege. The benefit of that defense was denied to the defendant. The court accorded to him the defense of privilege provided the jury found that the remarks were pertinent or relevant to the judicial proceeding. The jury found the remarks to be not pertinent or relevant.

There is no doubt that the words thus spoken by the defendant were ill-advised, indiscreet and violative of judicial ethics, and that the defendant exemplified the truth that "An over-speaking Judge is no well tuned cymbal." (Bacon, Essay on Judicature.) But the remedy for judicial misconduct is not by a civil action. This is shown by an examination of the authorities and reasons underlying them. A justice of the peace may be disciplined by censure or removal by this court. (Code Crim. Proc. § 132.) Other judges are subject to similar discipline under statutory and constitutional provisions.

The precise question in its present form, in respect of a justice of an inferior court or a court of record, has not been passed upon in this State. Most of the cases which concern alleged slander or libel in the course of judicial proceedings relate to alleged conduct of suitors or their counsel. This may explain why the rule applicable to them has been applied in the case at bar.

At common law in England the rule of absolute privilege applied alike for the benefit of suitors, counsel, judge or jurors. In America, however, particularly in New York, the common-law rule of absolute privilege against civil action for tortious publications in the course of judicial proceedings has had encrusted upon it, so far as suitors and counsel are concerned, the limitation that such privilege is available only where the words complained of were relevant and pertinent. (Cf. *Link* v. *Moore*, 84 Hun, 118; *Chapman* v. *Dick*,

197 App. Div. 551; *People ex rel. Bensky* v. *Warden, etc.,* 258 N. Y. 55; *Marsh* v. *Ellsworth,* 50 id. 309, 312.) In *Aylesworth* v. *St. John* (25 Hun, 156) an alleged libel by a justice of the peace was involved. The privilege doctrine limited by the rule of pertinency and relevancy was there applied in a case in which, however, the defendant justice prevailed. Hence, whether or not the principle laid down therein was too narrow had no immediate or practical importance. In *Seneca* v. *Colvin* (176 App. Div. 273) there was involved an irregular, erroneous exercise of judgment by a justice having jurisdiction of the subject-matter and parties, resulting in an alleged false imprisonment. He was held not to be civilly liable therefor.

The English common-law doctrine in respect to judicial officers has never, in this State, been limited by the rule of pertinency and relevancy in any case where a justice was required to respond in damages. The common-law rule in England, however, has been stated without such a limitation by Chief Justice KENT in *Yates* v. *Lansing* (5 Johns. 282). The facts of that case did not make the element of pertinency or relevancy vital to the decision. But the principle of absolute privilege without limitation was declared to be the law of this State.

The reason for the American limitation upon the common-law rule of privilege in respect of suitors and counsel in a judicial proceeding does not exist in respect to a judicial officer.

A justice may be disciplined by means specifically provided for that purpose, which means of corrective discipline, hereinbefore indicated, are exclusive; but a suitor or his counsel cannot be reached or be required to respond, if either publish in the course of judicial proceedings a slander, which is not pertinent or relevant, except through the medium of a civil action. In the case of a libel, possibly a remedy by indictment is also available.

The reasons of public interest and policy which lie back of the according of absolute privilege to a judicial officer in respect to freedom from civil action were stated with characteristic clarity and cogency by Chief Justice KENT in *Yates* v. *Lansing.* He said, *inter alia:* " The doctrine which holds a judge exempt from a civil suit or indictment, for any act done, or omitted to be done by him, sitting as judge, has a deep root in the common law. It is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions in the English courts, amidst every change of policy, and through every revolution of their government. A short view of the cases will teach us to admire the wisdom of our forefathers, and to revere a principle on which rests the independence of the administration of justice.

*Juvat accedere fontes atque haurire.* \* \* \* It did not escape the discernment of the early sages of the law, that the principle requisite to secure a free, vigorous and independent administration of justice, applied to render jurors as well as judges, inviolable; and I fully acquiesce in the opinion of Lord Ch. J. WILMOT, that trials by jury will be buried in the same grave with the authority of the courts who are to preside over them."

KENT, Ch. J., also pointed out that in *Hammond* v. *Howell* (1 Mod. 184; 2 id. 218) a recorder of London — a judge of a Superior Court — had fined and imprisoned a petit juror; that his act in so doing was illegal, high-handed and arbitrary; that such a case was calculated to awaken sensibility and try the strength of the rule of absolute privilege. Yet a holding eventuated that the defendant should be given the benefit of absolute privilege, without limitation, as a complete defense, and the complainant was relegated to having the judicial act reversed on appeal, and if it were corruptly indulged in, to have it made the subject of complaint to the King for discipline or removal. This reasoning of Chief Justice KENT was approved in *Scott* v. *Stansfield* (L. R. [3 Exch. 220, 224], decided in 1868). That case involved an alleged slander by a county judge. He was charged with having said of the plaintiff in the course of a judicial proceeding, " You are a harpy, preying on the vitals of the poor." A defense of absolute privilege was interposed. It was sustained without any limitation based on relevancy or pertinency. That was the first time such a question had arisen in reference to a county judge, and the rule applicable to inferior judges was applied to judges of courts of record. KELLY, C. B., there said: " a series of decisions uniformly to the same effect, extending from the time of Lord COKE to the present time, establish the general proposition that no action will lie against a judge for any acts done or words spoken in his judicial capacity in a court of justice. This doctrine has been applied not only to the superior courts, but to the court of a coroner and to a court martial, which is not a court of record. It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law independently and freely, without favour and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. How could a judge so exercise his office if he were in daily and hourly fear of an action being brought against him, and of having the question submitted to a jury whether a matter on which he had commented judicially was or was not

relevant to the case before him? Again, if a question arose as to the *bona fides* of the judges it would have, if the analogy of similar cases is to be followed, to be submitted to the jury. Thus if we were to hold that an action is maintainable against a judge for words spoken by him in his judicial capacity, under such circumstances as those appearing on these pleadings, we should expose him to constant danger of having questions such as that of good faith or relevancy raised against him before a jury, and of having the mode in which he might administer justice in his court submitted to their determination. It is impossible to overestimate the inconvenience of such a result. For these reasons I am most strongly of opinion that no such action as this can, under any circumstances be maintainable."

The public mischief which would ensue from permitting civil actions of this sort to be brought against judicial officers far outweighs the private inconvenience or damage to individuals who may deem themselves aggrieved by judicial conduct.

When one is aggrieved by the slander of a suitor or counsel, if a private remedy were not available, the aggrieved person would be remediless, although in the case of a criminal libel (not slander) a remedy by indictment might be available. Hence, the justification for restricting the English common-law rule of absolute privilege by limiting the protection to pertinent or relevant publications. But when one is aggrieved by an alleged slander or libel published by a judicial officer, there is another remedy which may be invoked. It is free from the element of public mischief and the debilitating effect upon the exercise of the judicial function which would result from sustaining the right to apply a private civil remedy for an alleged grievance. The utmost freedom of action is insured to a judicial officer in a judicial proceeding for the same considerations of public policy which motivate giving a similar absolute privilege to a legislative officer acting in the course of legislative proceedings.

The instant case furnishes an excellent example of the unwisdom of permitting the maintenance of such an action. Here a justice of the peace has been cast in damages for the publication of words (in the erroneous exercise of judgment) which, in part, are not slanderous *per se* and where it is debatable whether any part of his utterances was slanderous *per se*. He has been assessed in respect of words which were not spoken of the man in respect to his business or calling (*Moore* v. *Francis*, 121 N. Y. 199, 203), and this on a record that purports to establish special damages, although the evidence is wholly inadequate to sustain a finding of special damage. This result may not be sustained under sound principles stated long ago. It is not without significance that there are no

authoritative New York cases since *Yates* v. *Lansing* (*supra*) involving a judicial officer, challenging its doctrine. This indicates an acquiescence in the soundness of the basic principles enunciated in that case; and that there is no limitation upon the absolute privilege doctrine in respect to judicial officers although such a limitation has been, in New York, woven into the common-law rule of England in the case of suitors and counsel for reasons which are inapplicable to judicial officers.

The judgment should be reversed on the law and the complaint dismissed, with costs. The appeal from the order denying a motion for a new trial should be dismissed.

LAZANSKY, P. J., KAPPER, SCUDDER and DAVIS, JJ., concur.

Judgment reversed on the law and the complaint dismissed, with costs. Appeal from order denying motion for a new trial dismissed.