Angelo **MUNAFO**, Plaintiff,

v.

**Julius HELFAND**, Defendant.

United States District Court
S. D. New York.
April 5, 1956.

Adler & Schwartz, New York City, for plaintiff. Milton S. Marks, New York City, of counsel.

Jacob K. Javits, Atty. Gen. of New York, for defendant. Irving L. Rollins, Asst. Atty. Gen., of counsel.

WEINFELD, District Judge.

This is a motion by the defendant pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S.C. A., to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

Plaintiff seeks to recover damages for slander and libel based upon an alleged oral statement made, and an identical statement contained in a press release issued, by the defendant. The claims for slander and libel are joined in a single count. Jurisdiction rests upon diversity, the plaintiff being a citizen of the State of Maryland and the defendant of the State of New York.

In broad outline the complaint alleges that on the 5th day of January, 1956, the defendant at a press conference in the presence and hearing of newspaper reporters and representatives of newspaper associations maliciously spoke, and at the same time furnished and published to those present a written press release, of and concerning the plaintiff as follows:

"I intend to find out if Willie Gilzenberg and Tex Sullivan (boxing director and promoter of the London Sporting Club, which had promoted boxing at St. Nicholas Arena) have been in violation of the law forbidding associations with known criminals such as Magliano and his partner, Angelo Munafo." (Angelo Munafo, meaning the plaintiff herein);

that said words were intended to apply to plaintiff and to hold him up as a known criminal; that the story was published in newspapers in Baltimore, Maryland where plaintiff resides and conducts business and was also published in various papers throughout the United States.

The complaint further alleges that the words so spoken and published by the defendant of plaintiff were false and defamatory, made without just or probable cause, that as a result plaintiff was injured in his good name and reputation, and further that he lost the patronage of customers of his restaurant business and standing with the boxing profession, particularly with the Boxing Commission of Maryland by which he was licensed to promote boxing matches. Plaintiff seeks to recover general, special and punitive damages.

The first ground upon which dismissal of the complaint is sought is that since it appears from the face thereof that the defendant was Chairman of the New York State Athletic Commission he is entitled to immunity for acts performed in the discharge of his duties. However, the complaint does not charge, nor does it appear therefrom, as contended for by the defendant, that at the time the alleged defamatory words were spoken and published by the defendant he was engaged in the performance of any official function as Chairman of the State Athletic Commission or in the exercise of any of the broad powers granted to the Commission.[1]

Paragraphs 9 and 10 which contain the nub of the plaintiff's claim omit any reference to the defendant's status and the allegations are directed against him as an individual. While it is true that previous paragraphs of the complaint state the defendant is Chairman of the New York State Athletic Commission and that as such he held press conferences, these allegations are specifically limited to occasions "prior to the times hereinafter mentioned." The earlier references are clearly descriptio personae and are intended to show that the defendant was acquainted with press conference techniques and aware of the likely wide distribution of statements made by him, written or oral. Upon the complaint as drawn there is no basis for determining (1) whether the immunity

1. McK.Unconsolidated Laws, § 9101 et seq. Cf. Tilelli v. Christenberry, Sup., 120 N.Y.S.2d 697.

doctrine[2] usually extended to judicial and quasi-judicial officers also protects one who is the head of a division of an executive department;[3] and (2) assuming arguendo that such an officer is entitled to immunity for official acts, whether in holding a press conference at which intended action was announced the defendant was engaged in the performance of his official duty.[4]

Since it does not appear from the face of the complaint that the statements were made in the performance of official duty, it is sufficient to withstand the first ground of attack and the defendant, if so advised, may plead the defense of privilege.[5]

The defendant next challenges the complaint on the ground that there is no showing the defendant requested, instigated or induced the publication of the alleged defamatory matter in the various newspapers. Of course the delivery of the release to the newspapermen was publication in and of itself.[6] As to the further publication by newspapers, the complaint alleges that the defendant knew or should have known that his statements and those contained in the press release would be published in newspapers in the United States. While it is true there are no words which in haec verba charge that he requested, instigated or induced the publication by the various newspapers, certainly the delivery of the release to the assembled newsmen was not without objective. In and of itself this was an affirmative act to induce representatives of the newspapers and other news media to publish its contents or substance.[7] One must be naive not to understand that a person who deliberately prepares and issues a release to press representatives does not intend thereby to obtain the widest circulation of its contents—indeed that is his very purpose.[8] The press release, in conjunction with a press conference, is recognized by publicists and public relations counsel as the most effective means of securing extensive coverage of its subject matter. To suggest that one holding a press conference at which he makes statements or issues previously prepared releases in-

2. Yates v. Lansing, 5 Johns.,N.Y., 282; Karelas v. Baldwin, 237 App.Div. 265, 261 N.Y.S. 518; Salomon v. Mahoney, 271 App.Div. 478, 66 N.Y.S.2d 598, affirmed 297 N.Y. 643, 75 N.E.2d 749. Cf. Gregoire v. Biddle, 2 Cir., 177 F.2d 579; Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, certiorari denied 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414; Morgan v. Sylvester, D.C.S.D. N.Y., 125 F.Supp. 380, 386, affirmed 2 Cir., 220 F.2d 758.

3. McK.Unconsolidated Laws, § 9101.

4. A substantial question exists under New York law on this issue. Cf. Murray v. Brancato, 290 N.Y. 52, 48 N.E.2d 257, 146 A.L.R. 906, where the New York Court of Appeals held that the publication by a judge of his opinion elsewhere than in the official reports was not an act performed in his official capacity since the law imposed upon the judge no duty to publish opinions in unofficial reports. See also Douglas v. Collins, 243 App.Div. 546, 276 N.Y.S. 87, affirmed 267 N.Y. 557, 196 N.E. 577; Comment, Defamation Immunity for Executive Officers, 20 U. of Chi.L.Rev. 677, 688 et seq., and cases there cited.

5. Cf. Hyman v. Press Pub. Co., 199 App. Div. 609, 192 N.Y.S. 47; Douglas v. Collins, 243 App.Div. 546, 276 N.Y.S. 87, affirmed 267 N.Y. 557, 196 N.E. 577.

6. Cf. Mencher v. Chesley, 297 N.Y. 94, 75 N.E.2d 257; Ostrowe v. Lee, 256 N.Y. 36, 38, 175 N.E. 505; Weidman v. Ketcham, 278 N.Y. 129, 131, 15 N.E.2d 426; Snyder v. Andrews, 6 Barb.,N.Y., 43; Youmans v. Smith, 153 N.Y. 214, 219, 47 N.E. 265; see also Odgers, Libel and Slander, 131 (6th ed.); Restatement, Torts, §§ 568, comment d, 577.

7. Cf. Schoepflin v. Coffey, 162 N.Y. 12, 16, 56 N.E. 502; Laidlaw v. Sage, 158 N.Y. 73, 52 N.E. 679, 44 L.R.A. 216; Thomas v. Smith, 75 Hun. 573, 27 N.Y.S. 589; Weston v. Weston, 83 App.Div. 520, 82 N.Y.S. 351; Valentine v. Gonzalez, 190 App.Div. 490, 179 N.Y.S. 711; see also Adams v. Kelly, Ry. & Mood. 156, 171 Eng.Rep. 977; Newell, Slander and Libel, § 193.

8. Cf. Valentine v. Gonzalez, 190 App.Div. 490, 179 N.Y.S. 711; Roberts v. Breckon, 31 App.Div. 431, 52 N.Y.S. 638; Thomas v. Smith, 75 Hun. 573, 27 N.Y.S. 589.

tends to confine his remarks to the members of the fourth estate is pretty much like saying that a man who takes deliberate aim really plans to miss his mark. The complaint is sufficient to support an allegation that the defendant was the instigator of the alleged defamatory matter.[9]

■ The defendant also contends that the alleged statements both oral and written, are not actionable per se. It is of course recognized that the same words may be libelous per se and yet not slanderous per se.[10] The historical basis for the difference in approach has been the view that the damage by written word is more widespread, reflects a more deliberate purpose, and the resulting injury more lasting and permanent than the spoken word, often uttered in the heat of an angry moment.

Almost one hundred and fifty years ago Lord Mansfield severely questioned the rationale for the distinction between oral and written defamation,[11] but found it too firmly entrenched in English law to overrule it and despite continued criticism thereafter by English and American courts it has remained imbedded in the law. However the development of modern media for mass communication and the celerity with which extensive and far-flung audiences can be reached by the spoken word have recently led some courts to · suggest a reappraisal of the age-old distinction.[12] Commentators have advocated its abolition as obsolete.[13]

The defendant's position is that, absent averments of special damage, the spoken words "known criminal" are not actionable because (1) they are not injurious upon their face since they do not necessarily charge a crime involving moral turpitude and may only refer to a misdemeanor; and (2) they do not defame the plaintiff in his occupation or business.[14]

■ In general, an utterance is deemed slanderous per se when the publication (a) charges the commission of a crime; (b) imputes some offensive or loathsome disease which would tend to deprive a person of society; (c) charges a woman is not chaste; or (d) tends to injure a party in his trade, business, office or occupation.[15]

■ In my view the statement attributed to the defendant is slanderous per se under items (a) and (d). It is true that Seelman notes that no case of slander can be found that to speak of one as a "criminal" is slanderous per se.[16] But this alleged lack of legal authority has usually been premised on the

---

9. Cf. Dioguardi v. Durning, 2 Cir., 139 F. 2d 774.

10. Ostrowe v. Lee, 256 N.Y. 36, 39, 175 N.E. 505; Moore v. Francis, 121 N.Y. 199, 204, 23 N.E. 1127, 8 L.R.A. 214; Villemin v. Brown, 193 App.Div. 777, 184 N.Y.S. 570, 571.

11. Thorley v. Kerry, 4 Taut. 355, 128 Eng. Rep. 367 (C.P., 1812).

12. E. g., Hartmann v. Winchell, 296 N.Y. 296, 300, 73 N.E.2d 30, also concurring opinion of Judge Fuld at page 303, of 296 N.Y., at page 32 of 73 N.E.2d. See also Restatement, Torts, § 568.

13. See, Prosser, Torts, § 92 (1941 ed.); Donnelly, Defamation by Radio: A Reconsideration, 34 Iowa L.Rev. 12; Paton, Reform and the English Law of Defamation, 33 Ill.L.Rev. 669, 673; Note, Television Defamation—Libel or Slander, 42 Va.L.Rev. 63, 74.

14. Hartmann v. Winchell,. 296 N.Y. 296, 298, 73 N.E.2d 30; Kleeberg v. Sipser, 265 N.Y. 87, 91, 191 N.E. 845; Moore v. Francis, 121 N.Y. 199, 203, 23 N.E. 1127, 8 L.R.A. 214; Kober v. Lyle, 173 App.Div. 655, 160 N.Y.S. 99; Armstrong v. Sun Printing & Publishing Ass'n, 137 App.Div. 828, 832–833, 122 N.Y.S. 531.

15. Onslow v. Horne, 3 Wils.K.B. 177, 95 Eng.Reports 999; Moore v. Francis, 121 N.Y. 199, 203, 23 N.E. 1127, 8 L.R.A. 214; Seelman, The Law of Libel and Slander, 599–601, and cases there cited; Odgers, Libel and Slander, 35 (6th ed.).

16. The Law of Libel and Slander, 632. Cf. Riley v. Baddour, Sup., 73 N.Y.S.2d 140, where the words: "I don't want to have anything to do with you. You have a criminal record," were held not slanderous per se.

ground that the word may import a non-indictable offense and not involve moral turpitude. This tenuous distinction, it has been suggested, has its genesis in a jurisdictional conflict between the ecclesiastical and royal courts in the Sixteenth and Seventeenth Centuries over libel and slander cases and the relief which could be granted.[17] Whether in the light of changed community attitudes and the tremendous coverage now attainable by the spoken word (frequently far in excess of the written word) it would still be true that to call one a "criminal" is not slander per se, need not be passed upon now. Here the adjective "known" gives enlarged meaning to the word "criminal".[18] The announcement of the defendant that he intended to find out if a boxing director and a promoter "have been in violation of the law forbidding associations with known criminals such as * * * Angelo Munafo * * *" (the plaintiff) clearly brands the latter as one whose criminal activities have been so extensive that it has commanded adverse public attention. The words "known criminal" are so all-inclusive as to embrace all crimes—felonies and misdemeanors. To the average person they suggest one who by a course of conduct, manner of living and prior criminal record has demonstrated that he has not reformed but remains a law violator and continues to engage in anti-social conduct.[19] The words impute moral turpitude and not some minor infraction of the laws. To say one is a "known criminal" suggests his criminality has been so notorious and of such a serious nature that he is readily identifiable in the public mind as a persistent law violator.

■ The true connotation of the words should be cast in our times for the harmless word of yesterday may today be one of reproach and odium.[20] It is not without significance that the Appellate Division, Second Department,[21] held that the word "crook" was slanderous per se. The basis of this holding was that in the light of current usage "a 'crook' is one who violates the criminal laws * * * [and is] synonymous with 'a criminal'". Thus the conclusion is compelled that the court, sub silento, was of the view that to call one a "criminal" is slanderous per se.[22]

I hold that in this day and age to call a person a "known criminal" is slanderous per se.

■ But apart from the foregoing, the complaint is sufficient since it appears that the oral statement would tend to injure the plaintiff in his busi-

17. Cf. Prosser, Torts, § 92 (1941 ed.); 8 Holdsworth, History of English Law 333, 348 (1926); Comment, The Pre-Thorley v. Kerry Case Law of the Libel-Slander Distinction, 23 Univ. of Chi.L.Rev. 1932. Cf. Webb v. Beavan, 11 Q.B.D. 609 (1883): "The expression 'indictable offence' seems to crept into the text-books but I think the passages in Comyn's Digest are conclusive to shew that words which impute any criminal offence are actionable per se."

18. The appellate courts of New York have reached different conclusions on calling one a "crook". Perhaps the fact that the adjective "biggest" was used may account for the difference in result. Thus in Villemin v. Brown, 193 App.Div. 777, 184 N.Y.S. 570, and Hofstadter v. Bienstock, 213 App.Div. 807, 208 N.Y.S. 453, "crook" has been held not to be action-able, absent proof of special damage; whereas in Weiner v. Leviton, 230 App. Div. 312, 244 N.Y.S. 176, "biggest crook" has been held slanderous per se.

19. Cf. People v. Pieri, 269 N.Y. 315, 322, 199 N.E. 495.

20. Cf. Mencher v. Chesley, 297 N.Y. 94, 100, 75 N.E.2d 257; Riesman, Democracy and Defamation, 42 Colum.L.Rev. 1282, 1300 et seq.

21. Weiner v. Leviton, 230 App.Div. 312, 244 N.Y.S. 176, 178.

22. Cf. Webb v. Beavan, 11 Q.B.D. 609, where the court held the innuendo "meaning thereby that the plaintiff had been and was guilty of having committed some criminal offence or offences" slanderous per se. See, Odgers, Libel and Slander, 36 (6th ed.).

ness or occupation. It alleges that plaintiff was licensed as a promoter by the Boxing Commission of Maryland. A statement that he is a "known criminal" would tend to injure him in this particular sphere of his activities since it appears that in both New York State[23] and the State of Maryland[24] boxing is under state regulation and licenses may be denied in the exercise of discretion based upon various factors including conviction of a crime or association with known criminals.

My conclusion on the slander aspect of plaintiff's claim makes it abundantly clear so far as the libel claim is concerned that publishing of one that he is a "known criminal" is libelous per se. Such a charge holds one up to public contempt, aversion and disgrace or to induce an evil and unsavory opinion of him in the minds of a substantial number of ordinary and decent citizens of the community and to deprive him of their society.[25]

Finally, much of the defendant's argument loses its force under the particular facts of this case, for it may well eventuate that the oral utterance was not slander but libel. The complaint alleges that the words of the oral utterance were identical with those set forth in the press release and if the proof establishes they were read by the defendant from the release the reading therefrom would be sufficient to sustain a claim for libel.[26]

The motion to dismiss the complaint is denied in all respects.

Settle order on notice.

23. McK.Unconsolidated Laws, § 9117(b).

24. Maryland Code Ann., Art. 56, § 97 et seq. (Flack ed. 1951).

25. Mencher v. Chesley, 297 N.Y. 94, 105, 75 N.E.2d 257; Sydney v. MacFadden Newspaper Pub. Corp., 242 N.Y. 208, 151 N.E. 209, 44 A.L.R. 1419; Bennet v. Commercial Advertiser Ass'n, 230 N.Y. 125, 129 N.E. 343; Triggs v. Sun Printing & Publishing Co., 179 N.Y. 144, 71 N.E. 739, 66 L.R.A. 612; Kimmerle v. New York Evening Journal, Inc., 262 N.Y. 99, 186 N.E. 217.

26. Hartmann v. Winchell, 296 N.Y. 296. 299, 73 N.E.2d 30; see also Judge Fuld's concurring opinion in which, while differing with the rationale of the majority of the Court, he noted "There might, perhaps, be some basis for urging that where such a third person actually *witnesses* the reading of a written defamation, the extent of the consequent damage to reputation in the hearer's estimation is the same as if he had himself read the document." 296 N.Y. at page 302, 73 N.E.2d at page 33.