James D. C. Murray, Appellant, *v.* Peter J. Brancato, Respondent.

Argued November 23, 1942; decided March 4, 1943.

*Otho S. Bowling* and *Robert H. Elder* for appellant.

*John J. Bennett, Jr., Attorney General* (*William J. Cahill* and *James S. Regan* of counsel), for respondent.

LEHMAN, Ch. J. The complaint alleges that the defendant, a judge of the County Court of the County of Kings, in deciding motions made by the District Attorney or by the plaintiff as attorney for a person then under indictment, "maliciously composed" two opinions, annexed to the complaint, containing defamatory statements concerning the plaintiff, a member of the bar of the State. The complaint further alleges "upon information and belief, that * * * defendant, acting unofficially and privately, published, and advised, induced, procured, and aided and abetted in the publication of" these opinions in the New York Law Journal and in New York Supplement, Second Series, and that "West Publishing Company was and is a corporation organized and existing pursuant to the statutes of the State of Minnesota, with its principal place of business in St. Paul, Minnesota, from which place it published and sold, for general distribution" the New York Supplement. In this action the plaintiff seeks damages from the defendant for each alleged publication. The gravamen of the plaintiff's asserted causes of action is "that said publication was false, which defendant at all times well knew; and was so published by him, acting unofficially and privately, as aforesaid, wantonly, recklessly and with malice aforethought to defame plaintiff and injure him both in his professional character and in his good name and reputation."

The defendant in his answer denied material allegations of the complaint and alleged as an affirmative defense to each cause of action that each opinion "complained of herein, was a judicial opinion duly written by defendant as said County Judge of the County of Kings, State of New York, in the exercise and discharge of his duties, upon the determination of a motion made before the defendant as such County Judge" and that these "judicial opinions * * * were entirely pertinent and relevant to the questions raised upon the aforesaid motions which they determined and are absolutely privileged." The Attorney-General of the State, appearing as attorney for the defendant, moved "for an order dismissing the complaint herein, upon the ground that the complaint fails to state facts sufficient to constitute a cause of action against defendant, and upon the further ground that the writing complained of, in the

complaint herein, was absolutely privileged under and by virtue of judicial immunity.'' The order of Special Term denying the motion was reversed by the Appellate Division and the motion to dismiss the complaint was granted on the ground that '' the publication of the opinions was in the exercise of a judicial function and they are absolutely privileged.'' (264 App. Div. 862.) The only question presented upon this appeal is whether the *publication* of which the plaintiff complains was '' in the exercise of a judicial function '' for which the law gives complete immunity to the judge even if he acted maliciously and with actual intent to injure the plaintiff.

There can be no doubt that the defendant is exempt from liability for all acts done in the exercise of his judicial function. Long ago Chancellor KENT in *Yates* v. *Lansing* (5 Johns. 282, 291) traced the history of the rule which exempts judges of courts of record from prosecution or suit for any illegal act done in the exercise of a judicial function and stated that the principle has '' a deep root in the common law.'' Citing with approval the opinion of Chancellor KENT, the Supreme Court of the United States in *Bradley* v. *Fisher* (13 Wall. 335, 351) formulated the applicable rule. '' Judges of courts of superior or general jurisdiction are not liable to civil actions for their *judicial acts,* even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the *clear absence of all jurisdiction* over the subject-matter.'' (Italics throughout this opinion are ours.) The rule or principle of exemption has been stated in many opinions and in varying forms, but '' It is to be seen that in these different modes of stating the principle, there abides a qualification. To be free from liability for the act, it must have been done as judge, in his judicial capacity; *it must have been a judicial act.* So it always remains to be determined, when is an act done as judge, in a judicial capacity? And this is the difficulty which has most often been found in the use of this rule, and which is present here; to determine when the facts exist which call into play that qualification. For it is plain that the fact that a man sits in the seat of justice, though having a clear right to sit there, will not protect him in every act which he may choose or chance to do there.'' (*Lange* v. *Benedict,* 73 N. Y. 12, 25, 26.)

No case has been cited to us where exemption from liability was claimed by a judge for any act done or words spoken or written when the judge was not actually sitting "in the seat of justice," *i. e.*, in connection with a matter then *sub judice*. The opinions which the plaintiff claims contain false and defamatory statements were written and filed in a matter upon which the defendant was called to rule. It is clear that even if those opinions had been written with knowledge of their falsity and with actual intent to injure the plaintiff, the defendant, in accord with the well-established public policy, would be exempt from liability for "composing" the opinions. The plaintiff does not claim otherwise. He seeks damages for the alleged *malicious publication of the opinions after the matter was no longer sub judice*. The problem presented upon this appeal is only whether the complaint alleges causes of action for such publication.

In this State, in accordance with the Constitution and statutes, a State Law Reporting Bureau has been established for the publication of official reports of opinions and decisions of the court. The Judiciary Law provides that the "law reporting bureau shall report every cause determined in the court of appeals and every cause determined in the appellate divisions of the supreme court, unless otherwise directed by the court deciding the cause; and, in addition, any cause determined in any other court which the state reporter, with the approval of the court of appeals, considers worthy of being reported because of its usefulness as a precedent or its importance as a matter of public interest." (§ 431.) In the next section the Judiciary Law provides that "the judges or justices of every court of record, including surrogates, shall promptly cause to be delivered to the state reporter, without charge, a copy of every written opinion rendered in causes determined therein." (§ 432.) Since only those opinions rendered in courts of first instance which might be useful as precedents or which have importance as a matter of public interest, are published in the official reports, the judges and justices of these courts have, with almost complete unanimity, given to the statutory mandate a practical construction, and they deliver to the State Reporter copies of only those opinions which the Reporter requests or which the judge writing the opinion might deem

" worthy of being reported." Regardless of the scope of the legislative mandate it is plain that the law of this State now places upon each judge an official duty to facilitate the publication in the official reports of opinions worthy of being reported. That new duty is so connected with the strictly judicial duties of a judge that we assume that all acts done in connection with the statutory duty fall within the scope of judicial immunity though done maliciously or corruptly. No such question is presented upon this appeal. The plaintiff here seeks to hold the defendant for the publication of an opinion in *unofficial* reports and concededly the law placed upon the defendant no duty in connection with such publication.

We are asked to take judicial notice that the New York Law Journal and the New York Supplement, though not official reports, are recognized legal publications, and that " opinions in the New York Supplement are continually cited both by judges and attorneys in opinions, decisions and briefs." Even though that be true, a judge has no official duty in connection with any publication of opinions except in the official reports. The publication of an opinion begins when the judicial decision is complete, and though in some degree connected with the exercise of a judicial function, since the law imposes upon the judge no duty to publish opinions in unofficial reports, acts connected with such publication are not performed by the judge in his judicial capacity. The judge's rights and duties there are the same as those of any private person and if he chooses to act he must be held liable like any other person for damages resulting from a wrongful act *maliciously performed with intent to injure another,* unless the courts on grounds of public policy extend into neighboring fields the immunity from liability created by law for the protection of judges when acting within the field of their official functions and duties. No imperative public policy pointing to such extension is contained in any statute and we discern none in any judicial decisions. Only by judicial legislation beyond the legitimate power of the courts could such extension be made; nor can we see any reason for extending the immunity to publications in the New York Law Journal and the New York Supplement and excluding from the extended field of immunity publications in Law Reviews, or even in popular magazines or in the daily press. Such differences

may be relevant in deciding whether the publication was made with actual malice and with intent to injure the person defamed by the publication — it is difficult to see in such differences a guide by which the court could draw a new line separating absolute judicial immunity from the qualified common law privilege in which all persons share.

Though we have found no case in which any court has discussed the question whether the absolute immunity of a judge extends to the publication of a judicial opinion, the courts of England long ago decided that the analogous absolute immunity of a member of Parliament for words spoken in the house does not extend to publication outside the house. (See Odgers on Libel & Slander [6th ed., 1929], pp. 269, 270; Newell on Law of Slander & Libel [4th ed.], § 355.) Except where the Legislature may perhaps have extended the absolute immunity of judges or legislators or may perhaps have conferred absolute immunity upon persons publishing true and correct accounts of judicial or legislative proceedings the publication of judicial and legislative proceedings in unofficial reports is privileged only if made in good faith and from proper motives. Odgers, op. cit. pp. 252, 265; Newell, op. cit. §§ 450, 460; Evans, " Legal Immunity for Defamation " 24 Minn. L. Review [1940] 607, 610; Prosser on Torts, [1941] 844–851.)

The Legislature of the State of New York by chapter 130 of the Laws of 1854 provided that " no reporter, editor or proprietor of any newspaper shall be liable to any action or prosecution, civil or criminal, for a fair and true report in such newspaper of any judicial, legislative, or other public official proceedings * * * except upon *actual proof of malice* in making such report, which shall in no case be implied from the fact of publication." This statute, it has been said, was " simply declaratory of the common law." (*Ackerman* v. *Jones,* 37 N. Y. Super. Ct. 42, 54.) The statute was in substance reenacted as section 1907 of the Code of Civil Procedure and as section 337 of the Civil Practice Act. Then in 1930 by chapter 619 of the Laws of 1930 the words " without proving actual malice in making the report " were omitted and no express qualification of the privilege remained in the statute. Still later the statutory privilege was extended to cover publication by all persons.

There may be doubt whether the omission of the express qualification of the privilege was intended to change the common law rule of liability where there is proof of "actual malice." See discussion of the effect of similar omission in the analogous English statute. (Odgers, op. cit. 267, 268.) There may be doubt too whether the statute is intended to apply to the publication by a judge of an opinion written by himself. No such questions are here presented or considered. The defendant has pleaded only his absolute immunity from liability for any acts done in his judicial capacity, and the courts below considered no other defense. In no event could the statute confer immunity for publication outside the State, and though we may presume that in Minnesota, where the New York Supplement is published, the common law rule exists which denies to an aggrieved person a right of action without proof of actual malice there is no allegation or proof that absolute immunity has been conferred by any statute there.

Improbable though it may be that this defendant or any other judge would publish an opinion with actual malicious intent to injure a lawyer, and though we may well doubt whether the plaintiff can prove such allegations contained in the complaint, we must upon this appeal assume that they are true. They are sufficient to constitute a cause of action.

The judgment of the Appellate Division should be reversed and the order of the Trial Term affirmed with costs in this court and in the Appellate Division.

FINCH, J. (dissenting). The question presented is whether the defense of absolute privilege is available to a defendant in a libel action based upon the charge that the defendant, a duly elected judge of the County Court, Kings county, procured the publication of two opinions written by him allegedly libeling plaintiff, in the New York Law Journal and the New York Supplement.

Plaintiff had been retained as counsel for one Gordon who had been indicted in the County Court of Kings county, of which defendant is a judge, for the crime of manslaughter. Plaintiff appeared before defendant and moved for an adjournment of Gordon's trial on the ground that plaintiff was then engaged in arguing a case before the Connecticut Court of Errors.

Defendant denied the motion and plaintiff declined to participate in the trial. The court then assigned counsel to Gordon. Gordon, through the assigned counsel, then declined to participate in the trial and was convicted. Plaintiff again appeared before defendant, moving to set aside the verdict on the ground that Gordon had been deprived of his constitutional right to have counsel of his own choosing. In denying this motion, defendant wrote the first allegedly libelous opinion, charging that plaintiff had merely attempted to win delay in order to have Gordon's case come up before another judge of plaintiff's choice. Plaintiff appealed, urging as the principal ground of reversal, defendant's action in assigning counsel instead of adjourning the trial at plaintiff's request. Subsequently the District Attorney made a motion before defendant, contending that plaintiff was including in the record on appeal only his own affidavit in reference to the aforesaid matters and moving that the other papers pertinent to said matters also be included in the record. In granting the District Attorney's motion, defendant wrote the second allegedly libelous opinion, implying that plaintiff had not acted in good faith in this matter and then had attempted to shift the blame to the clerk of the court. It appears that defendant thereafter forwarded copies of these opinions to the New York Law Journal and the New York Supplement, with the request that they be published.

The New York Law Journal is published by a corporation located in New York city. The Law Journal has been designated as the official newspaper in the First Judicial Department for the publication of calendars and official notices. The New York Supplement, second series, and the Advance Sheets of the New York Supplement, second series, are published by West Publishing Company located at St. Paul, Minnesota. Both the Supplement and the Advance Sheets to the Supplement are well known legal publications, widely circulated among the legal profession in this and other states.

Upon the publication of the aforesaid two opinions, plaintiff based the present libel action against defendant. The first cause of action alleges the publication of the first opinion in the New York Law Journal. The other three causes of action allege the publication in Minnesota of the first and second opinions in the New York Supplement, and also the second opinion in the

Advance Sheets of the New York Supplement. It is further alleged that defendant officially and in his individual capacity procured the publication of these opinions in these publications.

Defendant pleaded absolute judicial privilege and moved for judgment on the pleadings. Special Term denied the motion, holding that while defendant acts in his official capacity when he reads an opinion in court or hands it to the clerk, he acted unofficially when he forwarded his opinions to these publications widely used in the legal profession though unofficial. The Appellate Division reversed and dismissed the complaint, holding that the publication of the opinions was in the exercise of a judicial function, and was absolutely privileged.

To resolve the question into its component parts we must determine, *first,* whether defendant is liable in a civil action for his utterances in an opinion, when it is alleged that defendant has maliciously made a defamatory and untrue statement in such judicial opinion. *Second,* whether the use of this opinion subsequent to its writing by the judge, in sending it to the New York Law Journal and the West Publishing Company, publisher of the New York Supplement, accompanied by a letter specifically requesting its publication, renders the judge liable in a civil action even though the writing of the opinions, as aforesaid, would not create such liability.

It has been the settled holding of the English Courts for many centuries, and is a principle generally accepted in this country, that judges of courts of superior or general jurisdiction are not liable in civil actions for their judicial acts, although such acts are in excess of their jurisdiction and are alleged to have been done maliciously. (*Lewis* v. *Levy,* E. B. & E. 537, 120 Eng. Reprint 610; *Wason* v. *Walter,* L. R. 4 Q. B. 73; *Lange* v. *Benedict,* 73 N. Y. 12, 25; *Sweeney* v. *O'Dwyer,* 197 N. Y. 499, 504; *Bradley* v. *Fisher,* 13 Wall. 335, 351.) This immunity rests upon the general principle, which is of the highest importance to the proper administration of justice, that a judicial officer, in exercising the authority conferred upon him, shall be free to proceed in accordance with his own convictions without apprehension of personal consequences to himself. Liability to anyone who might feel himself aggrieved by the action of the judge would be inconsistent with the possession of this freedom, and would impair that independence which is so necessary to an efficient

judiciary. A judge who maliciously makes a defamatory and untrue statement in the course of a judicial proceeding commits a reprehensible act for which he may be punished, but considerations of public policy protect the judge from any challenge of his good faith in a civil action. This principle obtains in all countries in which there is any well ordered system of jurisprudence.

Is the privilege of freedom from liability in a civil action then lost to those making public use of a judicial opinion if it is alleged that the opinion was forwarded with a letter requesting publication to the New York Law Journal and the New York Supplement? In determining the question of the liability of one dealing with a judicial opinion, it must be remembered that the opinion forms a part of the record of the case and that this record is filed as a public document. As a public document a judicial opinion may be reproduced freely. Article VI, section 22, of the State Constitution provides that all judicial opinions or decisions shall be free for publication by any person. The Constitution also requires the Legislature to provide for the creation of a State Law Reporting Bureau, charged with the duty of publishing official reports of opinions and decisions of all the courts of this State. (Art. VI, § 22.) Implementing this provision of the Constitution, the Legislature has required that the judges or justices of every court of record, including Surrogates, shall promptly cause to be delivered to the State Reporter, without charge, a copy of every opinion rendered in causes determined before them. (Judiciary Law, § 432.)

The filing of the record in a case in public places and the constitutional provision for free publication of judicial opinions are founded upon the permanent policy of the State to have justice administered publicly rather than in Star Chamber. (*Lee* v. *Brooklyn Union Pub. Co.*, 209 N. Y. 245, 247; cf. *Stevens* v. *Sampson*, (1879–80) L. R. 5 Ex. D. 53, 55.) The Civil Practice Act, indeed, has gone further in carrying out this policy by providing that a civil action may not be maintained against any person for the publication of a fair and true report of any judicial, legislative or other public and official proceedings. (§ 337.)

It is urged, however, that the privilege of judicial immunity cannot be extended to publication of an opinion in the New York Supplement which is published in the State of Minnesota.

An opinion must be read not only by the immediate litigants before the court, but also by members of the legal profession in general who must deal with it in the light of the principle of *stare decisis* and this applies to attorneys and others both within and without the State. It is well known that decisions and opinions in the New York Supplement are continually cited both by judges and attorneys in opinions, decisions and briefs. Therefore, publication of judicial opinions in this recognized and widely used legal publication is an accepted and constituent part of the judicial process in this State. Such publication comes within the principle that any dealing with a part of a record in a case must, for the proper and efficient administration of justice, be attended with an absolute privilege in order to protect attorneys and others using this record, as well as the judge.

Any person dealing with or sending a duly written judicial opinion to the New York Law Journal or New York Supplement should not first have to consult the libel law. To hold that upon such publication the privilege is lost is contrary to the very principle upon which the privilege is founded. We decide nothing else.

As to matters which lie outside the scope of the judicial authority vested in the judge, he occupies no different position from the members of the bar and his fellow citizens, and his actions are judged by the same measure of responsibility. (*Douglas* v. *Collins*, 243 App. Div. 546, affd. 267 N. Y. 557.)

The judgment appealed from should be affirmed.

LOUGHRAN, RIPPEY and DESMOND, JJ., concur with LEHMAN, Ch. J.; FINCH, J., dissents in opinion in which LEWIS and CONWAY, JJ., concur.

Judgment accordingly.