ROBERT L. BRADFORD, Plaintiff, *v.* NICHOLAS M. PETTE, Defendant.

Supreme Court, Special Term, Queens County, June 12, 1953.

*E. F. W. Wildermuth* for plaintiff.

*Nathaniel L. Goldstein, Attorney-General (Irving L. Rollins* of counsel), for defendant.

HILL, J. In September, 1952, plaintiff commenced in this court an action for false arrest and imprisonment against some fifty-four defendants. That action was removed to the United States District Court for the Eastern District of New York by petition " on behalf of all the defendants " dated September 25, 1952, filed with the clerk of that court on the day following and with the clerk of this court on September 30, 1952. (Defendant's Exhibit " 1 ".) By notice of motion dated October 4, 1952, plaintiff moved in the District Court to remand the action to this court, specifying ten grounds for such relief. That motion was denied in an opinion (Defendant's Exhibit " 2 ") by the District Judge, dated November 14, 1952 (reported in *Bradford* v. *Harding*, 108 F. Supp. 338), and an order thereon made and filed on November 25, 1952.

Overlapping a portion of the period covered above were proceedings involving defendant Farrell, a New York City detective, and three other individual defendants. Farrell was served with process on or about September 8, 1952. The cor-

poration counsel of the City of New York interposed in this court an answer on Farrell's behalf on or about October 7, 1952. On or about December 3, 1952, plaintiff served a notice to examine Farrell before trial and a subpœna directing him to appear for examination at the Special Term of this court. Upon Farrell's default in appearing for examination, plaintiff moved pursuant to the provisions of section 405 of the Civil Practice Act to strike out Farrell's answer, for an assessment of damages, and for a forfeiture of $50 for failure to obey the subpœna. That motion was, except as to the forfeiture, granted by default by order dated January 6, 1953, the court expressly noting, however, in its memorandum that: " The court understands that it may be hereafter asserted that this action is not pending in this court, but has been removed to the United States District Court for the Eastern District of New York. The efficacy of the order of removal as to this defendant has not been passed upon, there having been no appearance by this defendant on this motion." (N. Y. L. J., Dec. 18, 1952, p. 1540, col. 3.)

By notice of motion dated January 5, 1953, plaintiff moved for an order directing an assessment of damages against three other defendants for their default in pleading. By order to show cause dated January 20, 1953, Farrell moved to vacate the order of January 6th — which, as already noted, had been entered against him by default — permanently to stay prosecution of the action in this court and to direct that all papers therein be transferred to the United States District Court.

Those were the two motions which came on to be heard, in their regular order on January 30, 1953, before the defendant here, a Justice of the Supreme Court of the State of New York, Tenth Judicial District, then duly assigned to preside in Special Term, Part I, the motion part of this court. After stating the facts as they had theretofore occurred, the defendant, in an opinion dated and filed on February 9, 1953, denied plaintiff's motion and, except for the stay, granted that of Farrell, on the ground that " Plaintiff's motion to remand having been denied as aforesaid, no valid proceedings could be taken in this court at any time following the removal." That disposition was expressly made without prejudice to the plaintiff seeking relief in the United States District Court for the Eastern District of New York.

This action for libel is predicated upon certain allegedly defamatory matter contained in said opinion, which plaintiff alleges " the defendant caused  *  *  *  to be published in

the New York Law Journal'' on February 10, 1953. The
defendant denied that he caused such publication to be made
and asserted the defense of judicial privilege, to wit, that
having composed, written and signed the opinion and delivered
it to the clerk for filing in accordance with rule 72 of the Rules
of Civil Practice, he had nothing whatever further to do with
the procedure of this court, pursuant to which it was regularly
published in the *New York Law Journal* on February 10, 1953,
under a contract entered into between the Justices of the
Appellate Division in the Second Judicial Department, and
the publisher, pursuant to the authority conferred by sub-
division 2 of section 91 of the Judiciary Law of the State of
New York. The second complete defense looks to section 337
of the Civil Practice Act and in substance pleads that the
publication was a '' fair and true report of any judicial
\* \* \* proceedings ''. The third complete defense claims the
privilege which is predicated upon the publication in good
faith and from proper motives of a true and correct account
of a judicial proceeding and the fourth complete defense pleads
justification based upon the truth of the allegedly defamatory
matter.

Plaintiff has now moved, pursuant to rule 109 of the Rules
of Civil Practice, to dismiss the aforementioned defenses as
insufficient in law; pursuant to rules 103 and 104, to strike
out the entire answer as sham and frivolous, and pursuant
to rules 112 and 113, for judgment. The defendant has coun-
tered with a motion for judgment on the pleadings, and for
summary judgment founded upon documentary evidence, con-
sisting, for the most part, of certified photostatic copies of
official records annexed to his verified answer and additional
evidence of the same quality incorporated in his moving papers.

The court will at the outset dispose of the defendant's pro-
cedural objections to plaintiff's motion. Since an action in
libel is not included within the first nine subdivisions of rule
113 of the Rules of Civil Practice, plaintiff's motion for sum-
mary judgment is unavailable to him, and must be denied.
(*McGreevy* v. *McGreevy,* 279 App. Div. 705; *Donnelly* v.
*National City Bank of New York,* 276 App. Div. 1096.) It is
otherwise when in an action not enumerated in said rule the
defendant moves for summary judgment based upon defenses
sufficient as a matter of law, including a general denial (*Levine*
v. *Behn,* 282 N. Y. 120), founded upon facts established prima
facie by documentary evidence or official record. (*Mione Acres*
v. *Chatmas Orchards,* 277 App. Div. 425, 426-427; *Marshall* v.

*United States Review Corp.*, 258 App. Div. 722.) Plaintiff's motion to strike the answer as sham and frivolous under rule 103 of the Rules of Civil Practice must also be denied since a motion under this rule is by its provisions limited to *part* of a pleading and not the whole thereof, and plaintiff has failed to specify in his notice of motion the particular matters in the answer to which he objects. (*Schwartz* v. *Marjolet*, 214 App. Div. 530.)

What remains then of plaintiff's motion is his application to strike the answer as sham and frivolous under rule 104 of the Rules of Civil Practice; his challenge of the legal sufficiency of the four complete defenses under rule 109, and his motion, under rule 112, for judgment on the pleadings addressed to the entire answer. Since affidavits may not be used in connection with motions made under rules 109 and 112, the affidavit annexed to the plaintiff's notice of motion has been considered, only with respect to his claim that the entire answer is sham and, together with other affidavits, in opposition to defendant's motion for summary judgment. Since plaintiff's motion is closely interrelated with that of the defendant, both motions will be considered together.

Although the opinion which contains the allegedly defamatory matter was composed, written and filed in connection with two motions which the defendant was called upon to decide in his capacity as a justice of this court, plaintiff charges in paragraph " 11 " of his amended complaint " That in composing said false and defamatory matter, defendant was actuated and motivated by actual malice and unlawfully, illegally, wilfully and maliciously intended to injure plaintiff." It is clear,however, that even if the opinion had been written with knowledge that the part complained of was false " and with actual intent to injure the plaintiff, the defendant, in accord with the well-established public policy, would be exempt from liability for ' composing ' " it. (*Murray* v. *Brancato*, 290 N. Y. 52, 56.) Judges " are not liable to civil actions for their *judicial acts*, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." (*Murray* v. *Brancato, supra*, at p. 55; *Bradley* v. *Fisher*, 13 Wall. [U. S.] 335, 351; *Lange* v. *Benedict*, 73 N. Y. 12, 25; *Gans* v. *Callaghan*, 135 Misc. 881, affd. 231 App. Div. 735, appeal dismissed, 256 N. Y. 552.)

Plaintiff, however, contends that defendant lacked all jurisdiction to make the determination embodied in his opinion and to utter the statements therein of which plaintiff complains.

One of such statements was part of a quotation from the opinion of the United States District Judge who denied plaintiff's motion to remand; the other was based upon Farrell's uncontradicted supplemental affidavits (defendant's Exhibits " B " and " C "), submitted with other supplemental papers (defendant's Exhibits " 1 " and " 2 ") to meet the plaintiff's valid objection theretofore made in two affidavits of his attorney that " the moving papers herein are fatally defective by reason of the fact that no affidavit is annexed showing that Farrell has a good and meritorious defense to this action." (*Rothschild* v. *Haviland,* 172 App. Div. 562; *Fitzgerald Mfg. Co.* v. *Alexander,* 200 App. Div. 164, 168, appeal dismissed, 234 N. Y. 608; *Calagna* v. *Green,* N. Y. L. J., May 12, 1953, p. 1592, col. 8; *Gritz* v. *Gavigan,* 69 N. Y. S. 2d 18.) In reciting the facts offered by Farrell to show that he had a meritorious defense to plaintiff's action for false arrest and imprisonment, the defendant did not adjudicate any of the rights of the parties in that action. He granted Farrell's motion to vacate the order directing an assessment to be taken against him and denied plaintiff's motion for a similar assessment against three other defendants, expressly noting that such disposition was " without prejudice to the plaintiff seeking relief in the United States District Court for the Eastern District of New York, to which he may deem himself entitled." (Defendant's Exhibit " A ".)

As for the claim that defendant in effect overruled two prior decisions in the same case, it should be noted that the Justice who made the *default* order of January 6, 1953, expressly stated in his memorandum: " The efficacy of the order [*sic*] of removal * * * has not been passed upon " and " The Court understands that it may be hereafter asserted that this action is not pending in this court." (N. Y. L. J., Dec. 18, 1952, p. 1540, col. 3.) This observation undoubtedly looked to the motion that Farrell subsequently made in this court to open his default and to vacate the order of January 6th made thereon.

The other decision, by still another Justice, dated January 29, 1953, granted plaintiff's motion to punish Farrell for contempt for disobeying the subpœna served upon him on December 3, 1952. (N. Y. L. J., Feb. 3, 1953, p. 386, col. 4.) No order was ever made on this determination, which has since been withdrawn upon Farrell's motion for renewal and reconsideration and the motion denied on the ground that this court had no jurisdiction to grant said motion " after the action had

been removed and plaintiff's motion to remand had been denied ". (N. Y. L. J., May 22, 1953, p. 1734, col. 1.) Aside from the fact that that motion paralleled plaintiff's previous unsuccessful attempt to direct him to forfeit the sum of $50 for his failure to obey the same subpœna, the motion to punish Farrell for contempt in no way involved the three defendants against whom plaintiff sought an assessment of damages and who, like Farrell, contended (defendant's Exhibit " 3 ") that since the action had been removed to the Federal court and its remand denied this court was without further jurisdiction in the matter. (*Fire Assn. of Phila.* v. *General Handkerchief Corp.*, 304 N. Y. 382, 385.)

Equally lacking in merit is plaintiff's claim that the defendant is estopped from claiming judicial privilege by reason of an allegation in a paragraph of his answer to plaintiff's petition in the Appellate Division for an order of prohibition annulling the defendant's determination of February 9, 1953, as " made without and in excess of jurisdiction ". This allegation merely stated in substance that notwithstanding the divestiture of this court's jurisdiction of plaintiff's action for false arrest and imprisonment and over the parties thereto (as the result of its removal to the Federal court and the refusal of that court to remand the action), plaintiff proceeded in this court and obtained by default the order of January 6, 1953, striking Farrell's answer and directing an assessment of damages to be taken against him for his failure to submit to an examination before trial pursuant to a notice and subpœna issued out of this court subsequent to the removal of the action. Not only was this allegation not an admission that defendant lacked jurisdiction to vacate said default order, but the denial by the Appellate Division of the petition for an order of prohibition established by implication that the defendant had not acted " without and in excess of jurisdiction." (*Matter of Bradford* v. *Pette*, 281 App. Div. 897.) The question of *jurisdiction* is, of course, the sole issue presented in a proceeding in the nature of prohibition. (*Matter of Hogan* v. *Court of Gen. Sessions*, 296 N. Y. 1, 8; *People ex rel. Livingston* v. *Wyatt*, 186 N. Y. 383, 393-394; 10 Carmody on New York Practice, p. 874.)

In any event, notwithstanding that his action had been removed to the Federal court and his motion to remand, concededly made without notice to Farrell, denied, plaintiff carried on in this court by initiating proceedings to examine Farrell before trial and then obtained the order of January 6, 1953, directing an

assessment which, if not vacated, may have resulted in a judgment for substantial damages against Farrell. Under these circumstances, the latter properly invoked the power of this court to open his default, a power which "grows out of the control it has over its own records and judgments, and the actions pending therein. * * * Whether the power shall be exercised in any case rests in its discretion * * * and inheres in the very constitution of the court." (*Vanderbilt* v. *Schreyer,* 81 N. Y. 646, 648; *Ladd* v. *Stevenson,* 112 N. Y. 325, 332; *Matter of Automatic Chain Co.,* 134 App. Div. 863, 866, affd. 198 N. Y. 618; see, also, *Matter of Bar Assn. of City of New York,* 222 App. Div. 580, 587.)

Under these circumstances, this court and the defendant, who duly presided in its motion part, were vested not only with jurisdiction to decide Farrell's motion to open his default but to pass upon plaintiff's own motion for an assessment of damages against three other defendants. (*Hughes* v. *Cuming,* 165 N. Y. 91, 94-95.) Through counsel plaintiff submitted papers, presented argument orally and in briefs that this court retained jurisdiction of his action for false arrest and imprisonment, at least as to Farrell and the three defendants who were in default in pleading. As was observed by the Court of Appeals in *Sweeney* v. *O'Dwyer* (197 N. Y. 499, 504), where a judge was sued for false arrest because he allegedly lacked jurisdiction to issue two warrants in contempt proceedings " * * * defendant was required to pass on the soundness of the propositions thus urged. These presented questions of law and fact arising in a legal proceeding properly before him. As a judge he was compelled to act judicially on questions included within the limits of a subject over which he had jurisdiction, and it seems to me extravagant to argue that because he may have acted erroneously and decided these questions in a wrong way, assuming such to have been the case, he lost jurisdiction ". It may be noted that on May 7, 1953, the United States Court of Appeals for the Second Circuit unanimously denied plaintiff's petition dated April 8, 1953, to mandamus the District Judge (who denied his motion to remand, *Bradford* v. *Harding,* 108 F. Supp. 338) to remand the action for false arrest and imprisonment to this court, or, in the alternative, for the Circuit Court itself, to do so.

Another basis urged by plaintiff for denying the defendant judicial immunity is that the allegedly defamatory statements in the opinion were not relevant or pertinent to the questions defendant was called upon to decide. In this State, however,

the doctrine of absolute privilege in respect to the acts of a judge in the course of judicial proceedings is not limited, as in the case of suitors and counsel, to matters that are pertinent or relevant. (*Yates* v. *Lansing*, 5 Johns. 282; *Karelas* v. *Baldwin*, 237 App. Div. 265.) As was observed by Mr. Justice CARSWELL, writing for a unanimous court in the *Karelas* case (*supra*, at p. 269): '' The utmost freedom of action is insured to a judicial officer in a judicial proceeding for the same considerations of public policy which motivate giving a similar absolute privilege to a legislative officer in the course of legislative proceedings.'' In *Scott* v. *Stansfield* (L. R. 3 Ex. 220, 223, decided in 1868), KELLY, C. B., said: '' How could a judge so exercise his office if he were in daily and hourly fear of an action being brought against him, and of having the question submitted to a jury whether a matter on which he had commented judicially was or was not relevant to the case before him?''

In paragraph '' 5 '' of the amended complaint plaintiff alleges '' That on or about February 10th, 1953 the defendant caused '' the allegedly defamatory matter contained in his opinion '' to be published in the New York Law Journal.'' The defendant denies that he caused the publication to be made, claiming that the publishing, no less than the composing, writing and filing of his opinion, was a *judicial act* for which no civil liability may attach.

There is no dispute here of the facts and circumstances under which the opinion was published in the *New York Law Journal*. The record establishes that it was processed through the clerk's office in the customary manner of the court. This process, the existence of which judicial notice is taken, is as follows: After a justice determines a motion the papers therein and the signed original opinion are delivered to the office of Special Term, Part I, in charge of a Special Deputy to the County Clerk (Judiciary Law, § 156), for filing in accordance with rule 72 of the Rules of Civil Practice. After an appropriate entry thereof is made in the '' Decision Book,'' an unsigned copy, previously struck off by the stenographer, as a matter of routine practice of the court, when typing the original, is placed by a clerk in an envelope which contains, or to which are added, other opinions, decisions, calendars, dispositions in the trial parts and other official notices of the court issued that day. That envelope is called for daily by a messenger employed by the *New York Law Journal*, and its contents delivered to its place of publication in New York County.

That this practice was followed with respect to the defendant's opinion is abundantly established by this record. Its course has been meticulously traced from the time the defendant signed the original in his chambers in the General Court House in Jamaica, New York, and its delivery with the papers upon which it was rendered to the clerk's office, where it was duly entered on page 263 of the " Decision Book " (defendant's Exhibit " 4 "), until the " Law Journal " envelope containing a copy was called for by the messenger employed by the *New York Law Journal* and by him delivered that day, February 9, 1953, to its composing room in New York County where it was published on an inside page of its February 10, 1953, issue under " Queens County * * * Decisions. Supreme Court — Special Term, Part I." (Defendant's Exhibit " 5.")

Plaintiff adduced no evidence showing or tending to show that the defendant, himself, procured, commanded, instigated or requested the publication of his opinion. It has been held that in the absence of proof of *affirmative* acts causing a publication to be made, a slanderous statement uttered in the presence of third persons is not the proximate cause of an injury alleged to have been sustained by its *subsequent* publication in newspapers by such persons (*Schoepflin* v. *Coffey,* 162 N. Y. 12), even though made with intent that such slanderous statement should be widely circulated. (*Lewis* v. *Chemical Foundation,* 233 App. Div. 287.) By a parity of reasoning, the mere filing with the Special Deputy County Clerk of a signed, original opinion disposing of motions defendant was duly called upon to decide was not the proximate cause of any injury the plaintiff may have sustained as the result of the publication of a copy the next day by the *New York Law Journal,* in the manner hereinbefore described. It should be noted that in *Murray* v. *Brancato* (290 N. Y. 60, 61–62, *supra*), copies of the judicial opinions there involved *were sent by the Judge* who rendered them to the publisher of the *New York Law Journal* and of the New York Supplement, accompanied by a *letter* specifically *requesting* their publication.

When the defendant ascended the bench of this court in 1950, he found in effect the practice which had been operating for many years, by which unsigned copies of decisions, opinions, dispositions and other similar matters relating to this court were, as a matter of regular daily routine, prepared for prompt publication by the *New York Law Journal.* He probably had reason to believe that, in the ordinary course of events, his

opinion having been signed by him and delivered to the clerk for filing, a copy thereof would eventually be supplied to and published by the *New York Law Journal*. He, himself, however, had nothing whatever to do with the machinery by which the publication was accomplished. Under these circumstances, he may not be held responsible for such publication.

Even if the procedure by which the publication was accomplished were to be held equivalent to causing such publication to be made, the defendant is still not liable, for such publication constituted an integral part of the administration of justice in the Supreme Court, Queens County. It was an *official judicial act,* performed in accordance with a subsisting contract entered into by the Justices of the Appellate Division of the Supreme Court in the Second Judicial Department and the New York Law Publishing Company, the owner and publisher of the *New York Law Journal* (Defendant's Exhibit " 7 ").

This contract, dated April 1, 1952, was entered into by the said Justices " in their official capacities only, acting by the authority conferred by statute. (Judiciary Law, § 91, subd. 2) " which, in pertinent part, provides: " The justices of the appellate division in the second department, or a majority of them, are hereby authorized to contract, from year to year, for the payment to the owner of the daily law journal designated pursuant to law by the justices of the appellate division in the first department for the publication of legal notices, of such compensation as they deem to be fair and reasonable for publishing *calendars, decisions, opinions,* disposition of cases, judgments, notices of pendency, liens, assignments, appointments of referees and receivers, assignments of justices and judges *and other similar matters relating to the courts in the second and tenth judicial districts* ". (Emphasis supplied.)

By its terms, the contract provided " for the publication of calendars, decisions, *opinions* and other similar matters relating to the courts in the second and tenth judicial districts," for the year commencing April 1, 1952. (Emphasis supplied.) It was entered into with the express representation and warranty by the publisher "that the New York Law Journal is the daily law journal published in the First Judicial Department which has been designated pursuant to law (Jud. Law Sec. 91, subd. 1) by the Justices of the Appellate Division of the Supreme Court in the said First Department, and that such designation remains in full force and effect." (Defendant's Exhibit " 6 ".)

It is true that in March, 1943, the Court of Appeals, in an opinion to which three Judges dissented, held that the *New York*

*Law Journal* was not an official report clothing a judge with judicial immunity from civil suit for sending and requesting the publication of two opinions rendered by him in the " seat of justice." (*Murray* v. *Brancato,* 290 N. Y. 52, 55.) An examination of the record and briefs on appeal shows that, unlike the situation at bar, the defendant there pleaded the single defense of judicial privilege and sought the dismissal of the action only by a motion for judgment on the pleadings. Neither the enabling statute (Judiciary Law, § 91, subd. 2), nor any contract made thereunder, was pleaded, discussed or even adverted to; nor was the court presented, as here, with that complete record of evidentiary and documentary evidence required for a final determination on the merits upon a motion for summary judgment (*Riley* v. *Southern Transp. Co.,* 278 App. Div. 605).

In the *Murray* case, moreover, the Judge who rendered the opinions that were the basis of the libel action caused them to be published, as already noted, by his own affirmative act in forwarding them to the publisher with an accompanying letter expressly requesting that they be published. Here the publication took place, not as the result of any act by the defendant, but as a matter of the routine practice of the court itself. Plaintiff does not show facts or even claim otherwise. He contends that because defendant was aware of the customary procedure by which opinions and decisions rendered in this court are published in the *New York Law Journal,* " he thereby selected the means of certain publication and set in motion the procedure designed to achieve such result. * * * If the [defendant] were acting in good faith, he could have withheld publication, as I am informed and verily believe that there is no legal duty upon a Justice of this Court to submit decisions or opinions to the Law Journal for publication."

It is difficult to perceive, when all " decisions, opinions * * * and other similar matters " relating to this court are published in the *New York Law Journal* as a matter of daily court routine, why the opinion in plaintiff's case should have been singled out for special treatment. While neither the contract dated April 1, 1952, nor the statute pursuant to which it was executed expressly imposes a duty upon this court or the Justices thereof to make copies of opinions, decisions, etc., available to the *New York Law Journal,* such duty is present by implication in light of the obvious purpose of the statute and contract, which is promptly to bring to the attention of immediate litigants and their counsel the decisions or opinions in the matters they may have submitted to the court for disposition so that proposed

orders or judgments may speedily be drawn and submitted for signature and entry. In this court, the clerks do not prepare so-called short-form orders on motions. Counsel are required by Special Term Rule XI to prepare and present their orders promptly. Subdivision (g) of said rule expressly provides: " Proposed orders on decisions must be presented before the close of the day succeeding that on which *the same appear in the Law Journal.*" (Emphasis supplied.) It may be noted that similar provisions are contained in subdivision (j) of rule 12 of Kings County Supreme Court Rules, and rule 11, Richmond County Supreme Court Rules.

Inherent in the foregoing provisions, read in light of the statute and contract, is the duty to make copies of decisions, opinions, etc., available to the publisher that they may " appear in the Law Journal." And so they have been construed by the long-established custom, practice and course of conduct of this and other courts, recognized by the Bar who look to the *New York Law Journal* for reports of all dispositions of matters that they may have submitted for decision in all but the courts of lowest jurisdiction in the city of New York and vicinity. Indeed, in this area it is the only means by which attorneys are notified of the decisions, opinions or other dispositions made in their cases; otherwise, they would be compelled to call at the clerk's office, or provision made by the courts to send copies to the respective attorneys. No such provision has been made in this court since both the Legislature in enacting the statute and the Justices of the Appellate Division in acting thereunder have made possible the immediate publication of its decisions, opinions and other dispositions in the *New York Law Journal.* While its front and editorial pages may contain commentary found in other " legal " publications, its inside pages are confined almost exclusively to reporting *official* court calendars, notices, decisions and opinions. In no sense is it a newspaper of general circulation; no other publication in the city of New York, be it a legal periodical, law review, or newspaper, serves the function performed by the *New York Law Journal* for the benefit of the courts, the Bench and the Bar.

True, a State law reporting system has been set up by the Judiciary Law (§§ 430 *et seq.*) to report " every cause determined in the court of appeals and  * * *  in the appellate divisions of the supreme court unless otherwise directed by the court deciding the cause; and, in addition, any cause determined in *any other court* which the state reporter  * * *  considers *worthy* of being reported because of its *usefulness as a*

*precedent or its importance as a matter of public interest."* (Emphasis supplied.) However, just as the State Reporter has the sanction of a statute in the Judiciary Law (§ 434) to contract for the " printing and publication " of the official series of reports, so has the Appellate Division in the Second Judicial Department the authority of a statute in the same law (Judiciary Law, § 91, subd. 2) to contract for the publication of decisions, opinions and other similar matters relating to this and other courts, by a private corporation — the owner of the *New York Law Journal.* While the official reports and the *New York Law Journal* serve somewhat different purposes, the latter, too, is a reservoir of decisions and opinions useful as precedents or important as a matter of public interest and often reported nowhere else. So far as the law of defamation is concerned, therefore, each is an integral part of the administration of justice and the publication of a report of a judicial decision or opinion in each, no matter how effected or caused, is a *judicial act* entitled to immunity under the principles which have herein been set forth.

Such immunity is indispensable to the judicial process which requires justice to be administered publicly rather than in Star Chamber (cf. *Lee* v. *Brooklyn Union Pub. Co.,* 209 N. Y. 245, 247, and *Stevens* v. *Sampson* [1879–1880] L. R. 5 Ex. D. 53, 55); it is founded upon the mandate of the Constitution of this State which provides, in part, that " all laws and judicial opinions or decisions shall    *   *   *    be free for publication by any person." (N. Y. Const., art. VI, § 22.)

The second defense looks to section 337 of the Civil Practice Act and in substance pleads, in the language of that statute, that the publication of defendant's opinion dated February 9, 1953, determining the two motions upon which he was called upon to rule in this court, was " a fair and true report of a judicial   *   *   *   proceedings ". A copy of said opinion has been annexed to the answer as " Exhibit A " and page 470 of the *New York Law Journal* of February 10, 1953, on which it appeared verbatim, has been annexed to defendant's motion papers. (Defendant's Exhibit " 5 ".) No issue is, accordingly, possible with respect to the publication of defendant's opinion being " a fair and true report " of the judicial proceeding in *this court* determining the two motions regularly made therein. The sole question is one of law, whether the statute (Civ. Prac. Act, § 337) applies to the publication by a judge of an opinion written by himself. (*George* v. *Time Inc.,* 259 App. Div. 324, affd. 287 N. Y. 742.) That question was not decided in *Murray*

v. *Brancato* (*supra*) since the defense of privilege under this statute was not pleaded. Plaintiff urges, however, that in " composing and publishing an opinion" a judge is not " reporting " a judicial proceeding within the meaning of the statute. That may be true so far as " composing " is concerned, but it is not true with respect to publishing an opinion. The privilege accorded by section 337 of the Civil Practice Act extends to *all* persons, without limitation, who are in any way responsible for publishing " a fair and true report of any judicial  *  *  * proceedings ". The fact that the person who may have been responsible for such publication is the judge who rendered the decision or opinion, should not deprive him, anymore than it would any other citizen, of this statutory privilege which is in no way dependent upon the judicial privilege.

It appears from the defendant's moving papers, and this court takes judicial notice of the fact, that the office of the clerk of Special Term, Part I, of this court is in the charge of a Special Deputy to the County Clerk of the County of Queens (Judiciary Law, § 156); that after a determination is processed in his office, as above described, the motion papers and the original opinion thereon are filed in his office to await the submission of proposed orders, and that then the original papers and signed opinion are subject to perusal and copy by the public except in matrimonial actions, to which the inhibitions provided by rule 278 of the Rules of Civil Practice apply.

Had an employee of the *New York Law Journal* or anyone else copied the defendant's opinion from the original filed with the clerk, its publication would under the statute be privileged as to both the publisher and the defendant. It is no less privileged because publication was facilitated by the long established practice in this court of having an unsigned copy struck off for the *Law Journal* as a matter of routine procedure at the time the original opinion was typed. To hold otherwise would do violence to the clear meaning of the statute. " Anyone, at any time, should be at liberty to publish what is a public, open record of the courts." (Seelman on Libel and Slander, par. 213, p. 184.)

Even prior to the 1940 amendment of the statute (L. 1940, ch. 561), it was established by decisional law that the privilege extended to *all* persons, not alone the publisher of " the fair and true report " of a judicial proceeding, but the reporter as well. (*Lewis* v. *Chemical Foundation*, 262 N. Y. 489.) The amendment, according to its draftsmen (see note 3B in Gilbert-Bliss Civil Practice Act under § 337; Penal Law, § 1345), was

designed to codify the existing law as established in the *Lewis* case. (See, also, Seelman on Libel and Slander, par. 213, p. 184; 1941 Supp., p. 54.)

Plaintiff argues further that privilege under the statute is not to be accorded to publication in the *New York Law Journal* because of its circulation outside the State. However that may be, it is in New York City that the *New York Law Journal* is printed and *first* issued to the public for circulation. New York, then, is the place where the defendant's opinion was published rather than the places without the State, where the issue of the *New York Law Journal*, in which it was printed, may have subsequently been distributed. (*Leroy* v. *Jamison*, Fed. Cas. No. 8,271; *Village of Tonawanda* v. *Price*, 171 N. Y. 415; *Loos* v. *City of New York*, 257 App. Div. 219.) The statute, of course, does not confer immunity for a publication which is made, that is, *first* given to the public, outside the State. (*Murray* v. *Brancato, supra*, at p. 59.)

The third defense is based on that part of the opinion in the *Murray* case which states (*supra*, at p. 58): "Except where the Legislature may perhaps have extended the absolute immunity of judges or legislators or may perhaps have conferred absolute immunity upon persons publishing true and correct accounts of judicial and legislative proceedings the publication of judicial and legislative proceedings in unofficial reports is privileged only if made in good faith and from proper motives."

Here the good faith and proper motives of the defendant are plainly evident from the pleadings, from the exhibits and from the undisputed and indisputable facts and circumstances disclosed by this record. His was no intemperate comment about the plaintiff. One of the statements here complained of consisted of six words taken out of context from a quotation of fifteen lines from the opinion of the District Judge, who denied plaintiff's motion to remand; the other statement was based upon Farrell's and his attorney's uncontradicted affidavits of merits submitted to meet the objection of plaintiff's attorney that the motion papers to open the default were "fatally defective by reason of the fact that no affidavit is annexed showing that Farrell has a good and meritorious defense to this action." The recital by the defendant of the facts offered by Farrell to show that he had a meritorious defense did not adjudicate any of the rights of either party to the action for false arrest and imprisonment; indeed, the plaintiff's rights were carefully preserved by defendant who expressly declared that his disposition of both motions was made " without prejudice to the plaintiff seeking

relief in the United States District Court for the Eastern District of New York, to which he may deem himself entitled.''

In view of the foregoing and the method by which the opinion was regularly published in the New York Law Journal without any affirmative act to that end on the part of the defendant, personally, there can be no question about his good faith and proper motives. What he did was well within the scope of his duties as a judge. To hold otherwise '' would impair the independence which is so necessary to an efficient judiciary.'' (*Murray* v. *Brancato, supra,* at pp. 58, 61–62.)

The fourth and last complete defense pleads the truth of the allegedly defamatory matter. (*Sanctuary* v. *Thackrey,* 189 Misc. 724, 731, affd. 273 App. Div. 883, motion for leave to appeal denied 297 N. Y. 1041.) This defense has been conclusively established by documentary proof and certified photostatic copies of court records annexed to the answer and to the defendant's moving papers. Although the existence of the judgment of the United States District Court for the Southern District of New York (Defendant's Exhibit '' E'') and the proceedings which preceded it (Defendant's Exhibits '' D,'' '' F,'' '' G,'' '' H '' and ''8 '') are not denied by the plaintiff, their validity is challenged upon numerous grounds. That challenge, however, at least in some respects, has already been overruled by the Federal courts (*United States* v. *Bradford,* 194 F. 2d 197, certiorari denied 343 U. S. 979; see, also, 194 F. 2d 199, for a description of other proceedings). Any further attack thereon must be made in those courts. (*People* v. *McCullough,* 300 N. Y. 107, 110–111.) Here the Federal proceedings are relied upon defensively as an effective predicate for the defense of truth in a libel action. Even if they were to be vacated and set aside at some future date, that would not alter the facts as they existed when the allegedly defamatory matter was published. (*Shields* v. *Chilton Co.,* 255 App. Div. 985.)

Each of the four complete defenses having been found sufficient in law, and, together with the defendant's denial that he '' caused '' the allegedly defamatory matter to be published, established by evidentiary facts, documentary evidence and official records with respect to which plaintiff has '' failed to carry the burden of showing facts sufficient to raise any triable issue '' (*Gribbin* v. *Mygatt,* N. Y. L. J., May 12, 1953, p. 1592, col. 7; *Marshall* v. *United States Review Corp.,* 258 App. Div. 722), the defendant's motion for judgment is in all respects granted. The amended complaint is dismissed on the merits, with costs, and plaintiff's motion is in all respects denied. Submit order.