## Sciandra v. Lynett

Before Aponick, P. J., and Flannery, Lewis, Pinola and Brominski, JJ.

*Laurence H. Eldredge, Ettore S. Agolino* and *William S. Degillio,* for plaintiff.

*J. Julius Levy* and *Joseph J. Savitz,* for defendants.

LEWIS, J., February 11, 1959.—This matter comes before the court on defendants' motion for judgment on the pleadings.

On June 30, 1958, plaintiff instituted an action in trespass seeking damages for an alleged libel based upon an article published in The Scranton Times, a daily newspaper, operated as a partnership by the individual defendants. The article forming the basis of plaintiff's action appeared in defendants' newspaper on May 21, 1958, and, in general, reports plaintiff as having been a participant in a "so-called hoodlum meeting" at the residence of a former resident of Pittston, one Joe Barbara, on November 14, 1957, at Apalachin, N. Y. Citing as its source of information a report issued by former New York State Investigations Commissioner Arthur L. Reuter, the article lists the names, addresses, occupations and criminal involvements of four residents of this county. Plaintiff was one of those to whom the article referred.

The article, captioned "Barbecue Gives Four a Bellyache," and listing Sciandra as a garment manufacturer, 108 South Main Street, Pittston, sets forth that he was identified as having been born in Buffalo and arrested in that city on July 12, 1935, on rape charges which were later reduced to third degree assault and a suspended sentence imposed.

To the complaint, defendants filed an answer and new matter. Attached thereto as "Defendants' Exhibits 'A', 'B', 'C', and 'D'," respectively, are a copy of the report submitted to the Governor of the State of New York under date of April 23, 1958, by Arthur L. Reuter, then Acting Commissioner of Investigations, entitled "Report on the Activities and Associations of Persons Identified as Present at the Residence of Joseph Barbara, Sr., at Apalachin, New York, on November 14, 1957, and the Reasons for Their Presence", certified as true by the Acting Secretary to the Governor and bearing the great seal of the State of New York, a photostatic copy of the statutory authority for the appointment of a commissioner of investigations, a copy of the "release" of the report to the public press, also encompassed in the certification of the Acting Secretary to the Governor and under the great seal of the State of New York and a photostatic copy of the newspaper article under question.

Defendants, under new matter, aver, inter alia, as follows:

"13. That the publication complained of in the Complaint was made on an 'occasion of privilege' for the public good and interest of Society, and is a fair, true, impartial and accurately reproduced report of the 'Report of the Commissioner of Investigation of the State of New York to the Governor of the State in the performance and exercise and discharge of his duties as Commissioner. . . .'"

Plaintiff thereafter filed a reply to new matter, reading as follows:

"1. Averments contained in Paragraphs 6 to 16 under the heading of New Matter in defendants' Answer to the plaintiff's Complaint are deemed denied by virtue of PRCP 1045 (a)."

The motion now before us is the following language:

"AND NOW, August 8, 1958, the pleadings in the

above captioned matter being closed, Defendants move the Court for judgment in their favor upon the pleadings, for the following reason:—

"Defendants have absolute privilege for the publication in issue as a fair and true report of the 'Report Of The Commissioner Of Investigation Of The State Of New York' to the Governor of New York, made pursuant to Sec. 11 of the 'Executive Law', (N. Y. Act of Assembly, Sec. 1, Ch. 887 of the Laws of 1953), and released by the Governor of the State of New York to the public press. The Report of the Commissioner of Investigation is averred in the Plaintiff's Complaint and is set forth under 'New Matter' in the Answer, and not specifically denied in the 'Reply' thereto."

It is apparent from a reading of the foregoing motion and argument before the court that defendants rely upon the theory of absolute privilege. It is well settled in the law that high public officials are exempt from all civil suits for damages arising out of false defamatory statements provided the statements are made in the course of the official's duties or powers and within the scope of his authority or within his jurisdiction. Absolute privilege is unlimited in its protection but not in its application. Defendants seek to extend its application to a newspaper report based upon an official report of a high governmental official to which there is no question absolute privilege applied.

We have examined carefully the cases cited by defendants and we are unable to find that they sustain defendants' position. Defendants place emphasis on the case of Matson v. Margiotti, 371 Pa. 188, which is here not controlling. There the action was against Charles J. Margiotti for alleged libel committed in his official capacity as Attorney General of the Commonwealth of Pennsylvania. It is true that the court found that an immediate delivery to the press by the Attorney General of a copy of a certain letter containing defama-

tory matter was entitled to an absolute privilege, but the judicial pronouncement went no further than to decree that absolute privilege, when applicable to official acts of public officials, was unlimited in its protection. It did not extend its application to a publication by newspapers. It must be noted defendant in the action was the Attorney General.

Defendants also rely upon the case of Greenfield v. Courier-Journal and Louisville Times Company, 283 S. W. 2d 839, 842 (Ky., 1955), in which a newspaper was sued for alleged libel and slander as the result of its publication of defamatory matter contained in a report of a Federal grand jury. The newspaper published the report in full and another defendant quoted a portion of it in a speech. We must recognize that the court there said:

". . . the doctrine of absolute privilege is like a protective roof extending over judicial proceedings. If the immediate participants in the act are protected, the record made certainly has the color of authenticity, and *those who do no more than republish the record should not be adjudged guilty of wrongdoing.*" (Italics supplied.)

It would therefore appear that in Kentucky the doctrine of absolute privilege is extended to newspaper publications when nothing more is done than to report verbatim a report of judicial proceedings. That does not appear to be in accord with the law of the Commonwealth, although we might parenthetically add that, even in this jurisdiction, there may be a practical extension of the doctrine when nothing more than an actual republication of a privileged report is made without comment. In such a case it seems fundamental that, assuming the assertion of such a cause of action, the burden upon a defendant would be virtually of a minimum to show that the republication was made upon a proper occasion, from a proper motive, in a

proper manner and based upon reasonable and probable cause. Except, nevertheless, in our jurisdiction, it would appear necessary that the facts forming those conclusions be elicited at trial, burdensome though that may be.

However, it must not be lost sight of that the decision in Greenfield v. Courier-Journal and Louisville Times Company, supra, was upon facts not fully consistent with those here alleged. Plaintiff here complains of an allegedly libelous newspaper article *based* upon an official governmental report. The article questioned was not limited to a verbatim report of the official report and, as we understand it, that is the crucial basis of plaintiff's complaint.

The report released to the press contained the following:   "APPENDIX 'C' — PAGE 54

"ANGELO JOSEPH SCIANDRA, 108 So. Main St., Pittston, Pa.

"Born: November 26, 1924—Buffalo, N. Y.; Occupation: Garment Manufacturer; Arrests: FBI #218-5503.

"PD Buffalo #33957—7/12/35—Rape 1st degree; reduced to Assault 3rd degree—Suspended sentence."

Referring to the above report, the newspaper stated:

"The listing on Sciandra is relatively short.

"He was identified as having been born in Buffalo and arrested in that city on July 12, 1935, on rape charges. The charges were later reduced to third-degree assault and he received a suspended sentence."

The headline of the article reads:

"Barbecue Gives Four a Bellyache."

And the news article contained the following:

"Four Northeastern Pennsylvania residents are identified as having participated in the beef barbecue New York State Police broke up last Nov. 14 at the palatial Apalachin, N. Y., home of former Pittstonian Joe Barbara.

"Prior to the so-called hoodlum meeting, the quartet was little-known outside of upper Luzerne County."

Defendants' counsel agree that if the article is not a true and accurate report of the report of the commissioner, then the motion for judgment should be denied.

One further point must be considered in connection with the doctrine of absolute privilege. In paragraph 14 of their answer under new matter, defendants aver as follows:

"14. That the Civil Practice Act of the State of New York, Sec. 337, as amended by Laws 1930, c. 619, provides in part:

" 'An action civil or criminal, can not be maintained against a reporter, editor, publisher, or proprietor of a newspaper, for the publication therein of a fair and true report of any judicial, legislative or other public and official proceedings, or for any heading of the report which is a fair and true headnote of the article published.'

"By this Act all publications falling within the purview of the statute are absolutely privileged."

It appears to us to be clear and fundamental that the New York statue can have no extraterritorial application. See Murray v. Brancato, 290 N. Y. 52, 48 N. E. 2d 257.

The question before us then, is: "Did the plaintiff's failure to deny paragraph 13 of defendants' Answer constitute an admission of the allegations contained therein so as to warrant judgment being rendered on the pleadings?"

Our first consideration in answer to that question must be as to the method employed by plaintiff. Plaintiff relied entirely upon Pa. R. C. P. 1045(a).

"Rule 1045, Answer, Appearance.

" (a) A party who fails to file a responsive pleading

shall be deemed to admit all averments relating to the identity of the person by whom a material act was committed, the agency or employment of such person or the ownership, possession or control of the property or instrumentality involved. All other averments shall be deemed to be denied.

"(b) All affirmative defenses, including but not limited to those enumerated in Rule 1030, and the defenses of consent, privilege, qualified privilege, fair comment, truth, justification, immunity from suit and impossibility of performance shall be pleaded under the heading 'New Matter'. A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading. The defense of contributory negligence need not be pleaded.

"(c) A defendant who files no pleading shall file a general appearance within twenty (20) days after the service upon him of the writ, or of the complaint if the action is commenced by complaint. The entry of an appearance shall not affect the defendant's right to plead."

Defendants contend that plaintiff's failure specifically to deny the allegations contained in defendants' new matter to the effect that the publication was a "fair, true, impartial and accurately reproduced report of the Report . . .", constitutes an admission of the same and therefore entitles defendants to judgment on the pleadings.

A reading of Goodrich-Amram, Procedural Rules Service, discloses the following commentary set forth under §1045 (b)-2:

". . . The plaintiff must file a complete answer to the averments of fact relating to the affirmative defenses in the new matter.

"Accordingly, failure of the plaintiff to file a reply to a properly endorsed answer containing new matter

will entitle the defendant to a judgment by default. Such a judgment; of course, entitles the defendant to no relief, but does constitute an admission of all the allegations of fact in the new matter, together with such legal conclusions as may flow therefrom."

However, in Grazer v. Newman (No. 2), 72 D. & C. 48, 51, the court said:

". . . we see no authority to compel the filing of a reply to new matter, unless a plaintiff desires to deny identity, ownership or agency."

In Boyd v. Rager, 9 D. & C. 2d 660 (1956), the court said:

" ' "We agree with Goodrich-Amram that a plaintiff should be compelled to answer the facts in a pleading in trespass setting up an affirmative defense, but it is clear that no rule of civil procedure now requires it." ' "

Commenting on this statement, Goodrich-Amram says the court reached an absurd conclusion. However, the court in this case points out that 2 Anderson, Pa. Civ. Pract. p. 663, et seq., indicates that the rules of civil procedure as presently written do not require a plaintiff in a trespass action to reply to new matter set out in a defendant's answer. It is quite apparent that there is a difference of opinion on this question.

". . . judgment on the pleadings should be entered only in clear cases": Bonanno v. Murray Corporation of America 185 Pa. Superior Ct. 230 (1958).

"Where a doubt exists as to whether or not a summary judgment should be entered, this should always be resolved in favor of refusing to enter it": Davis v. Investment Land Co., 296 Pa. 449; Moran v. Bair, 304 Pa. 471; Sun Ray Drug Co., v. Lawler, 366 Pa. 571.

Upon argument on the motion for judgment on the pleadings, plaintiff's counsel requested permission to amend his pleadings (reply to new matter) if the court

was of the opinion that it is necessary specifically to deny the averments contained in defendants' answer and new matter.

Pa. R. C. P. 1033 provides:

"A party, either by filed consent of the adverse party or by leave of court, may *at any time* change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, *even though they give rise to a new cause of action or defense*. An amendment may be made to conform the pleading to the evidence offered or admitted." (Italics supplied.)

"If an alleged defect in a pleading may be cured by amendment, a final judgment should not be entered without affording an opportunity to amend": Berkebile v. Nicholas Grill, Inc. 18 Beaver 142 (1957).

"The court will permit a plaintiff to amend his complaint if facts germane to the issue have been omitted from the original pleading, even where the motion to amend is made while an additional defendant's rule for judgment on the pleadings, with an order staying all proceedings, is pending": Benscoter v. D. L. & W. Railroad Co., 46 Luz. 267 (1957).

"A party may at any time amend his pleadings, by leave of court, even though the amendment gives rise to a new defense": Keller v. R. C. Keller Motor Company, 386 Pa. 56.

We believe the decisions in the foregoing cases are in accord with the liberal construction mandate of Pa. R. C. P. 126, and the dictates of Pa. R. C. P. 1033 with respect to amendments. Therefore, if we felt that plaintiff, by his pleading error, was now impaled upon the point of a procedural technicality, we would feel compelled to allow him to amend. However, in spite of the fact that plaintiff's reliance upon Pennsylvania

Rule of Civil Procedure 1045 (*a*) may have been technically in error, we do not believe his failure specifically to deny defendants' allegations under new matter was in all respects an admission of the same.

The burden upon a litigant who may have a qualified privilege, which, in our opinion, is all that defendants are entitled to, is to show that the publication of the alleged libelous matter was made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable and probable cause. It might be construed that defendants have roughly paraphrased those requirements in their averment to the effect that their "report of the 'Report of the Commission of Investigation . . .' was fair, true and accurately reproduced." Nevertheless, by their employment of those words, defendants have, in effect, concluded the ultimate facts at issue. Such words, although not words of law, are, in effect, conclusions of fact and no proper response would be available to plaintiff except perhaps in some manner to dispute the fairness, truthfulness and accuracy of the publication. We are satisfied that to make such a requirement would, in effect, be to saddle upon plaintiff a burden which rightfully belongs to defendants. That we have no right to do.

Likewise, defendants' paragraph 14 under new matter is a matter of law not applicable to this jurisdiction, and paragraphs 15 and 16 are conclusions of law. Plaintiff's failure specifically to deny those allegations are not admissions thereof, and any admissions flowing from his failure to deny the balance of the allegations of new matter are, in our opinion, innocuous and cannot entitle defendants to judgment.

Clearly then, in this preliminary stage of the proceedings where the substance of the alleged cause of action and whether it has any merit or worth is not before us for decision, we are unanimously of the opin-

ion that we must deny defendants' motion and allow such cause to proceed.

Now, February 11, 1959, at 10 a.m., defendants' motion for judgment on the pleadings is denied.